IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| LEWIS EDWIN CULBERSON | ) | Chapter 13 |
| PATRICIA DIANNE CULBERSON | ) | Case No. 1:15-bk-15519-SDR |
| Debtor. | ) | |
| _____ | ) | _____ |
| | ) | |
| **LEWIS EDWIN CULBERSON** | ) | |
| **PATRICIA DIANNE CULBERSON** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Adversary Proceeding** |
| | ) | **No. 1:21-ap-01012-SDR** |
| NATIONSTAR MORTGAGE, LLC | ) | |
| dba MR. COOPER | ) | |
| **Defendant.** | ) | |

_____

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER'S MOTION TO DISMISS**
_____

Come now the Plaintiffs, Lewis Edwin Culberson and Patricia Dianne Culberson (hereinafter "Plaintiffs" or "Culberson's"), by and through counsel, and hereby file this Brief in Opposition to Nationstar Mortgage LLC d/b/a Mr. Cooper's (hereinafter "Defendant" or "Nationstar") Motion to Dismiss. Plaintiffs respectfully oppose Defendant's Motion and requests that the Court deny this motion in its entirety.

**I.    INTRODUCTION**

1. On December 18, 2015, the Plaintiffs filed their Chapter 13 bankruptcy case. [Case No. 1:15-bk-15519-SDR].

2. The Plaintiffs' plan was confirmed on January 28, 2016. [Doc No. 19].

1

3. The Plaintiffs faithfully made payments towards their plan, and the Chapter 13 Trustee filed its Notice of Final Cure on June 17, 2020. [Doc No. 43].

4. On July 7, 2020, a Response to the Notice of Final Cure was filed identifying the mortgage as current with no pre-petition or post-petition default payments due and payable.

5. Nevertheless, Defendant continued to send letters and mortgage statements highlighting that the Plaintiffs were in default on their mortgage.

6. Defendant threatened Plaintiffs with a potential foreclosure action if they did not pay the improperly accounted amounts.

7. As a result of this egregious conduct, Plaintiffs were forced to file their Complaint which commenced this adversary proceeding. [Doc No. 46].

8. This Court granted Plaintiffs' Motion to Reopen Case on April 9, 2021. [Doc No. 53].

9. On May 13, 2021, Defendant lodged its Motion to Dismiss Adversary Proceeding (hereinafter "Motion"). [Doc No. 8 in AP].

10. Now, Plaintiffs respond in opposition and respectfully request that this Court deny the Motion in its entirety.

## II. ARGUMENT

### A. Dismissal Standard

This Court should deny the Defendant's Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6) because dismissal in this action is not proper. First, this Court has already made clear that cases of this nature lead to this Court having subject matter jurisdiction. Simply put, this Court has highlighted as follows:

> Pursuant to 28 U.S.C. § 1334, "the district courts shall have
> original but not exclusive jurisdiction of all civil proceedings
> arising under title 11, or arising in or related to cases under title 11.

> The district court may refer these cases to the bankruptcy court where the bankruptcy judge is granted authority to "hear and determine all cases under Title 11 and all core proceedings under title 11. 28 U.S.C. § 157(a) – (b)(1).

*In re Cawood*, 577 B.R. 538, 548 (Bankr. E.D. Tenn. 2017). This Court goes on to explain the definition of a core proceeding and also provides examples. *Id.* More importantly, this Court highlights the crucial distinction that any potential recovery in this matter would benefit the estate. *Cawood* at 549. Most importantly, and identical to this case, this Court in *Cawood* identified the validity of the argument that "… the amount of the claim is directly related to the extent of the lien." *Id.* Delving even deeper, the *Cawood* case, with a starkly similar set of facts, shows this Court's identification that various "… state contract and tort law and federal nonbankruptcy law…" claims are "related to" the Plaintiffs' bankruptcy case when "the outcome of that [claim] could conceivably have any effect on the estate being administered in bankruptcy." *Id.*[1] In short, this Court's analysis paired with the footnoted *Waldman* standard is guiding with regard to any questions of subject matter jurisdiction.[2] As to the Culberson's, any recovery based on the egregious actions taken by Nationstar would absolutely have "any" effect on the administration of the estate, and as such, this court has subject matter jurisdiction.

Moving on, the Supreme Court has made clear that 12(b)(6) claims warrant dismissal only when a plaintiff cannot prove any facts in support of his or her claim for which the court could grant relief. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Similarly, courts in the Sixth Circuit "… analyze all allegations in the complaint as true…" when adjudicating motions to dismiss.

---

[1] See *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 489 (6th Cir. 1996). See also *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995); *Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012).

[2] It is important to note that the *Cawood* holding by this Court was affirmed by Judge Collier from the U.S. District Court, E.D. Tennessee at Chattanooga. 1:17-cv-357.

*Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011). Moreover, this court has posited that courts "… must accept as true all well-pled factual allegations [but not legal conclusions] stated in the complaint." *In re Vollberg*, No. 1:16-bk-12276-SDR at *2 (Bankr. E.D. Tenn. June 27, 2017).[3] The footnoted *Iqbal* case makes clear that sufficient complaints "… draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678. It is apparent that the Culberson's have sufficiently pleaded facts which would allow a finder of fact to draw a reasonable inference that Nationstar is liable. It is also apparent that Plaintiffs have pleaded facts which would allow for relief to be granted. As such, this Motion should be denied.

**B.    Plaintiffs' First Claim Is Valid**

Plaintiffs' claim seeking a determination of validity and amount of the lien is properly asserted against Defendant, and Plaintiff reincorporates its argument regarding subject matter jurisdiction as stated above. Briefly, Plaintiffs wish to point out that this Court has already made clear that seeking the extent of a lien is a core proceeding subject to this Court's jurisdiction, pursuant to 28 U.S.C. § 157(b)(2)(K). *Cawood* at 549. This Court continues to highlight that the extent of a lien is directly related to the amount of the Proof of Claim in the bankruptcy case. *Id.* The Culberson's reincorporate this argument as this case contains a starkly similar set of facts as in *Cawood*.

Additionally, Defendants rely on several cases which are not only distinguishable, but completely unrelated to the set of facts in this case. Defendants assert a theory of addressing payments outside of the bankruptcy context while citing to *Lanton v. Ocwen Loan Servicing, LLC*, but *Lanton* and the Sixth Circuit represents a small business owner who brought a claim for "… denial of the loan or loans for the purchase of [an] ambulette." 793 F. App'x 398, 400 (6th Cir.

---

[3] See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic, Corp. v. Twonbly*, 550 U.S. 544 (2007)).

2019).  This case is wholeheartedly distinguishable, and the facts are in no way comparable to this case.  Defendants also surprisingly cite to *Otero v. Green Tree Servicing, LLC (In re Otero)*, a non-binding New Mexico decision which concluded with the bankruptcy court granting the debtor/plaintiff nearly $16,000 in damages for harassing telephone calls after the debtor stopped making "voluntary payments" to the defendant.  498 B.R. 313, 317 (Bankr. D.N.M. 2013).  The only clear legal analysis from that holding relates to the lack of a private right of action regarding discharge violations, but this type of action has not been asserted by Plaintiffs in this case.  *Otero* at 319.  Finally, Defendants rely on *Dudley v. Buffalo Rock Co.*, a non-binding Alabama District Court case which has no relation whatsoever to mortgage claims or even a mortgage in general.[4]  In fact, the *Dudley* case highlights an issue arising over a life insurance policy which led to arbitration and an eventual bankruptcy case filing.  *Dudley* at *4.  Astonishingly, upon a simple search of the case, the words mortgage, 7001(2), or even *payment* do not even show up in the court's opinion.[5]  Plaintiffs assert this case has no relation whatsoever to the facts at hand.  To the extent that this case is being relied upon by Defendants to support a 12(b)(6) claim, it is clear that dismissal is not proper.  In sum, dismissal is not proper as to Count I under a theory of both Fed. R. Civ. Proc. 12(b)(1) *or* 12(b)(6).

C.     **This Court has Subject Matter Jurisdiction over All Pleaded Claims**

Plaintiffs reassert and reincorporate the statements made in Section A of this Brief.  The *Waldman* test paired with this Court's extensive analysis on state law claims related to alleged mortgage violations highlights the subject matter jurisdiction held by this Court over these claims.  *Cawood* at 549.  The facts of this case are nearly identical to those of *Cawood*, and the claims

---

[4] 2:19-cv-00519-RDP, 2021 U.S. Dist. LEXIS 58225 (N.D. Ala. Mar. 26, 2021).

[5] The only identification of Rule 7001(2) is when the court analyzes what the difference between a contested and adversary proceeding is.

5

asserted are also nearly identical. As such, this Court has subject matter jurisdiction over this case and Claims I-VIII.[6]

### D.    Plaintiffs' Count II Constitutes A Valid Legal Claim For Intentional Misrepresentation

Plaintiffs have properly asserted a claim for Intentional Misrepresentation. In Tennessee, a plaintiff must prove: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation. *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012).[7] It is apparent that Plaintiffs have fulfilled all six (6) of the *Hodge* elements.

In this case, the Culberson's have asserted several facts in their Complaint which fulfill the *Hodge* analysis. **1)** Defendant stated in a letter that the Plaintiffs' mortgage was past due by one hundred (100) days on June 19, 2020; **2)** This was false as the Chapter 13 Trustee filed its Notice of Final Cure stating that the Plaintiffs' mortgage was current on June 17, 2020, and on July 7, 2020, counsel for the trustee on the Plaintiffs' mortgage filed its response agreeing that the Plaintiffs were current; **3)** These representations are material facts as the amount due or not due and the status of the loan are wholeheartedly material to the conclusion of the Chapter 13

---

[6] Defendants do not dispute that this Court holds subject matter jurisdicition as to Claim VIII and thus this Brief does not address the same.

[7] See also *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d at 311; *Metropolitan Gov't of Nashville & Davidson Cnty. V. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992.

6

and the Plaintiffs' lives; **4)** Defendant intentionally/and or recklessly made this representation without checking to see whether it was true or false with its accounting department; **5)** Plaintiffs didn't know that the mortgage company was intentionally/recklessly making representations and thus continued to send payments for each month even when they were not being applied properly; and **6)** Plaintiffs have asserted damages/harm in the form of threatened foreclosure action, inability to obtain the promised fresh start post-Chapter 13 discharge, the necessitation of re-opening the Chapter 13 case and commencing an adversary proceeding, and in becoming victims to improper mortgage accounting. All these facts were asserted clearly and with supporting exhibits. As such, the Plaintiffs have properly pleaded a claim for intentional misrepresentation and thus Defendant's Motion should be denied.

**E.     Defendant Misstated the Status of Plaintiffs' Mortgage and thus Negligently Misrepresented the Loan Status**

By misrepresenting the loan status of Plaintiffs' mortgage, Defendant negligently misrepresented facts that were relied upon by Plaintiffs. Tennessee has adopted the Restatement (Second) of Torts definition via § 552, and states as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Ritter v. Custom Chemicides*, 912 S.W.2d 128, 130 (Tenn. 1995). In simple terms, Plaintiffs have explicitly stated in their Complaint that Defendant supplied false information as made clear by the Trustee's Notice of Final Cure which led Plaintiffs to justifiably rely on that false information in being forced into reopening their Chapter 13, filing this adversary proceeding, and being unable

7

to take advantage of the fresh start associated with a Chapter 13 discharge. As such, a claim for negligent misrepresentation has been properly pleaded.

**F.        Defendant was Negligent in not Properly Accounting for Plaintiffs' Payments**

In Tennessee, negligence must be proven via five (5) elements. Specifically, plaintiffs must prove the existence of duty, breach, injury, causation in fact, and proximate cause. *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996).[8] It is asserted without question that the Culberson's have proven and pleaded that a duty existed between the Defendant and Plaintiff in overseeing the accounting of the mortgage, that the Defendant improperly accounted for payments thus breaching that duty, and that these improper practices caused harm both factually and proximately. The Motion should be denied on these grounds.

Briefly, Plaintiffs also wish to address the assertion by Defendant that it does not owe a common law duty to the Plaintiffs. [Doc 8-1, Page 11]. Defendant argues that, under Tennessee law, they do not owe Plaintiff a duty of care citing by referring to *Layne v. Ocwen Loan Servicing, LLC,* No. 4:17-CV-4, 2018 WL 1524608, at *7 (E.D. Tenn. Mar. 28, 2018) to support their contention. The Layne facts are not analogous to Plaintiffs' facts. Layne involved a servicer's refusal to refinance - not the servicer's improper handling of mortgage payments. *Id.*

The authority cited by Defendants (*Layne*) acknowledges itself that there may be special circumstances which would be representative of a duty existing. When looking at the case at hand associated with the special circumstances concept, one can see that there is a grey area with regards to what actually represents special circumstances in a given situation. *Permobil v. Am. Express Travel Related Servs. Co.*, 571 F.Supp. 2d 825, 842 (M.D. Tenn. 2008). Plaintiffs assert this is especially true in a situation where a mortgage company or servicer is improperly applying

---

[8] See also *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993).

mortgage payments in direct contradiction to representations made under penalties of perjury to the bankruptcy court. As such, Plaintiffs assert there is a special circumstance that is representative of a duty of care being owed by Defendant to Plaintiffs in handling their mortgage loan.

### G.  Defendant Breached the Contract with Plaintiffs

It is apparent that Defendant breached its contract with Plaintiffs as the servicer of Plaintiffs' mortgage loan. Plaintiffs show that a successful breach of contract claim must show the existence of a contract, nonperformance which amounts to a breach, and damages as a result. *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006).[9] With regard to privity, Defendant owed (and owes) duties to act as Plaintiffs' point of contact, determining the amount of Plaintiffs' monthly payments, taking Plaintiffs' monthly payment checks, and ultimately referring Plaintiff's home for foreclosure. Plaintiffs identify that these obligations create contractual privity between Defendant and Plaintiffs under Tennessee law. *See Howell v. Betts*, 362 S.W.2d 924, 925-26 (Tenn. 1962).[10]

### H.  Defendant Violated 15 U.S.C. § 1639f

With regard to this dispute, Plaintiffs sympathize with and rely on identical facts in *Cawood* which this Court has identified as representative of a violation of 15 U.S.C. § 1639f. There is no question that § 1639f references servicers. Defendant is seemingly attempting to circumvent the law by alleging that they are merely a servicer and not a creditor which somehow attributes to not being legally obligated to properly apply payments that they receive from debtors. Irrespective of

---

[9] See *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01-9511-cv-00513, 1998 Tenn. App. LEXIS 89 (Tenn. Ct. App. Feb. 6, 1988).

[10] (showing that the old rule related to the existence of duty of care and privity is no longer in existence).

this, Defendant is a creditor for purposes of § 1639f as it is listed in several places on PACER as well as in the claims register itself as the direct addressee for U.S. Bank.[11]

### I. Defendant Violated the Fair Debt Collection Practices Act

Plaintiffs assert that the Defendant violated the Fair Debt Collection Practices Act. However, the Defendant attempts to analyze the definitions of words rather than address the sufficiency of Plaintiffs' Complaint which shows that Defendant is a debt collector for purposes of the Fair Debt Collection Practices Act. It is abundantly clear that Defendant is an entity which uses "any instrumentality of interstate commerce … which regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." as a mortgage servicer. See 15 U.S.C. § 1692a(6).[12]

Defendant also asserts that Plaintiffs have failed to identify any facts which show damages sustained as a result of the improper mortgage accounting practices exhibited by Defendants. Not so. Plaintiffs have identified the problems associated with threatened foreclosure action, loss of the post-discharge Chapter 13 fresh start, and the necessity of this adversary proceeding. Plaintiffs have also made clear in the Complaint that they were faced with considerable stress, increased attorney's fees, and costs associated with the reopening of their Chapter 13. There is no question whatsoever that the egregious mortgage accounting practices exhibited by Defendant led to the damages suffered by Plaintiffs as asserted in their Complaint.

---

[11] Defendants did not raise any questions of principal/agent relationships, but for the sake of this Brief, Plaintiffs show that this Court has highlighted the relationship of actions attributable to both note holder (US Bank) and servicer (Nationstar). *Cawood* at 554.

[12] For reference, Plaintiffs have linked Defendant's website showing its own statements regarding 3.5 million nationwide customers and its stature as the 4th largest mortgage servicer in the world. https://www.mrcooper.com/about_us/overview

**J.    Nationstar Violated the Automatic Stay Protections of 11 U.S.C. § 362**

Defendant explicitly violated the automatic stay protections afforded to the Plaintiffs pursuant to 11 U.S.C. § 362. While Defendant asserts that the automatic stay is no longer in effect upon reopening, Plaintiffs show that the case law is sparse on the subject. Nevertheless, Plaintiffs highlight *In re Geberegeorgis* from the Bankruptcy Appellate Panel of the Sixth Circuit as it highlights another 9th Circuit Case: "On the other hand, a bankruptcy is usually closed after the bankruptcy proceedings are completed . . . . ***A bankruptcy is reopened under 11 U.S.C. § 350(b), not to restore the prebankruptcy status, but to continue the bankruptcy proceedings***."[13] The phrase "continue the bankruptcy proceedings" implies that the automatic stay "recommences" upon reopening of the bankruptcy case.

It is clear that failure to apply payments made during the course of the Chapter 13 and between discharge and reopening is a violation of the automatic stay. The only case Defendant cites in support of its argument, *Rodriguez v. Countrywide Home Loans, Inc.*, cites itself at least four (4) other persuasive authorities which hold that "misapplication of plan payments violate the stay." *In re Rodriguez*, 421 B.R. 356, 367 (Bankr. S.D. Tex. 2009)[14]. In sum, Defendants have violated the automatic stay afforded to Plaintiffs by its problematic actions associated with the accounting of the Plaintiffs' loan.

---

[13] *In re Geberegorgis*, 310 B.R. 61, 65 (B.A.P. 6th Cir. 2004) citing *Armel Laminates, Inc. v. The Lomas Nettleton Co. (In re Income Property Builders, Inc.)*, 699 F.2d 963, 965 (9th Cir. 1982).
[14] Citing *In re Jones,* 366 B.R. 584, 599 (Bankr. E.D.La.2007), aff'd 391 B.R. 577 (E.D.La. 2008); *In re Sanchez,* 372 B.R. 289, 313 (Bankr.S.D.Tex.2007); *In re McCormack,* 203 B.R. 521, 525-26 (Bankr.D.N.H.1996); *In re Payne,* 387 B.R. 614, 638-39 (Bankr. D.Kan.2008).

### III. CONCLUSION.

For the foregoing reasons, and based on the egregious and dilatory mortgage accounting practices exhibited by the Defendant, Plaintiffs respectfully request that this Court deny the pending Motion to Dismiss and enter any other relief the Court deems just and proper.

This 16th day of June, 2021.            Respectfully submitted,

                                        RICHARD BANKS & ASSOCIATES, PC

                                        By: /s/ Richard L. Banks
                                              Richard L. Banks (BPR No. 000617)
                                        393 Broad Street NW
                                        Cleveland, TN 37311
                                        P: (423) 479-4188
                                        F: (423) 478-1175
                                        rbanks@rbankslawfirm.com
                                        *Counsel for the Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I hereby certify that I have served a copy of the foregoing Brief in Opposition to Nationstar Mortgage, LLC's Motion to Dismiss to the following by first class mail, e-mail, and/or through the Court's electronic filing notice:

Bret J. Chaness, Esq. (via Regular Mail & E-mail)
Rubin Lublin TN, PLLC
3145 Avalon Ridge Place, Suite 100
Peach Tree Corners, GA 30071
bachaness@rubinlublin.com
*Counsel for Nationstar Mortgage, LLC*

Lewis Edwin & Patricia Dianne Culberson (via Regular Mail)
1457 Chestuee Road
Delano, TN 37325
*Plaintiffs*

This 16th day of June, 2021.        RICHARD BANKS & ASSOCIATES, PC

                                            By: /s/ Richard L. Banks
                                                Richard L. Banks (BPR No. 000617)