IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| IN RE:<br><br>LEWIS EDWIN CULBERSON and<br>PATRICIA DIANNE CULBERSON,<br><br>　　　Debtors. | Case No. 1:15-bk-15519-SDR<br>Chapter 13 |
| LEWIS EDWIN CULBERSON and<br>PATRICIA DIANNE CULBERSON,<br><br>　　　Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC d/b/a MR.<br>COOPER,<br><br>　　　Defendant. | Adversary No. 1:21-ap-01012-SDR |

### NATIONSTAR'S REPLY TO DEBTORS' RESPONSE TO ITS MOTION TO DISMISS

COMES NOW, Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar"), and files this Reply to the Debtors' Response [Doc. 12] to its Motion to Dismiss [Doc. 8], respectfully showing this Honorable Court as follows:

**A.   THIS COURT LACKS SUBJECT MATTER JURISDICTION PRIMARILY BECAUSE THERE IS NO ESTATE LEFT TO ADMINISTER**

In its Motion to Dismiss, Nationstar argued in large part that this Court lacks subject matter jurisdiction over nearly all the claims in the Complaint because there can be no "related to" jurisdiction when there is no estate left to administer. *See* [Doc. 8-1] at pp. 7-8. In response, the Debtors contend that this Court does have subject matter jurisdiction because "any recovery based on the egregious actions taken by Nationstar would absolutely have 'any' effect on the

1

administration of the estate . . . ." [Doc. 12] at p. 3. To support this argument, the Debtors cited to *In re Cawood*, 577 B.R. 538 (Bankr. E.D. Tenn. 2017).

The problem with the Debtors' reliance on *Cawood*, however, is that the debtor there was in the midst of his Chapter 13 case when the adversary was filed. He filed for Chapter 13 bankruptcy on August 12, 2014, and the adversary was filed on August 11, 2015. *See id.* at 541, 545 (noting that the underlying bankruptcy case was No. 1:14-bk-13504-SDR). A review of the docket in the underlying case shows that the debtor did not obtain a discharge until November 24, 2020. *See In re Cawood*, No. 1:14-bk-13504-SDR (Bankr. E.D. Tenn) at [Doc. 89]. Thus, there was clearly an estate that could benefit from a recovery in *Cawood*.

Here, however, the Debtors obtained a discharge on May 20, 2020, after completion of all plan payments. *See* [Doc. 1] at ¶¶ 17-20. In fact, the case was completely closed and had to be reopened to file this adversary. *See* [Bk. Docs. 45, 53]. There is simply no estate left to administer. *See Perry v. EMC Mortg. Corp.*, 388 B.R. 330, 337-38 (Bankr. E.D. Tenn. 2008) (Stair, J.).(bankruptcy court did not have subject matter jurisdiction over post-discharge mortgage payment application issues because there was no estate remaining and discharge order provided that property was no longer part of estate). This is further evidenced by the Debtors' confirmed plan, which provided that "[a]ll property of the Debtor(s) is included as property of the estate and shall remain so until discharged unless otherwise ordered by the Court." [Bk. Doc. 19] at p. 3. There is no other order of the Court on the docket that could result in there still being an estate to administer. Moreover, the confirmed plan paid unsecured creditors 100%, *id.*, so it is not as if the Debtors could somehow argue that there are unsecured creditors who could somehow benefit from a judgment in this case (despite 11 U.S.C. § 1329(a) expressly prohibiting such a modification after plan payments are complete). As such, there is no subject matter

2

jurisdiction over any claim in this case other than for a violation of the automatic stay, which Nationstar showed should be dismissed for failure to state a claim.

**B.    THE CLAIM UNDER RULE 7002(1) FAILS**

In the first claim in the Complaint, the Debtors try to assert a claim under Rule 7002(1) to determine "the validity, priority, or extent of a lien or other interest in property . . . ." Nationstar argued that there is no subject matter jurisdiction over this claim, and if there was, the Debtors failed to state a claim. In response, the Debtors' only argument as to why their claim can prevail is because in *Cawood*, "this Court has already made clear that seeking the extent of a lien is a core proceeding subject to this Court's jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(K)." [Doc. 12] at p. 4. However, as noted above, *Cawood* is inapposite because the underlying bankruptcy case was in a much different posture. Additionally, just because a proceeding may be core does not mean that the Court automatically has subject matter jurisdiction.

> [I]t is important to note the distinction between the determination of whether a court has jurisdiction over a proceeding and the determination of whether the proceeding is "core" or "non-core." "These aspects of bankruptcy law are not interchangeable. The status of a proceeding as core or non-core does not affect the issue of jurisdiction." *Bank United v. Manley,* 273 B.R. 229, 238 (N.D.Ala.2001). "Subject matter jurisdiction is the court's authority to entertain an action between the parties before it." *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.),* 885 F.2d 621, 624 (9th Cir.1989).... Whether a matter is "core" or "non-core" under 28 U.S.C. § 157(b) then controls the extent to which the bankruptcy judge may exercise the district court's bankruptcy jurisdiction. *Id.* § 157(c). "The core/noncore determination under 28 U.S.C. § 157(b) and (c) implicates the bankruptcy court's power to render final orders or judgments; it is not a determination that the bankruptcy court either possesses or lacks subject matter jurisdiction over a particular proceeding." *Holly's, Inc. v. City of Kentwood (Matter of Holly's, Inc.),* 172 B.R. 545, 556 (Bankr.W.D.Mich.1994)[.]

*In re Perry*, 388 B.R. at 337–38 (quoting *Hart v. Logan (In re Hart)*, No. 05-8001, 2005 WL 1529581, at *3 (6tth Cir. B.A.P. June 24, 2005)).

Thus, the Debtors arguments are unavailing, and this Court should dismiss the first claim in the Complaint for the reasons set forth in Nationstar's initial brief.

## C.     THE DEBTORS HAVE FAILED TO STATE A CLAIM FOR FRAUD

Nationstar next argued that even if this Court had subject matter jurisdiction, the Debtors have failed to state a claim for intentional misrepresentation. Specifically, Nationstar argued that the Debtors did not allege any facts showing reasonable reliance on any supposed misrepresentations, failed to show damages, and failed to plead – as required by Rule 9(b) – the fraudulent scheme and fraudulent intent of Nationstar. In response, the Debtors did not appropriately address these deficiencies. With respect to reliance – which is pleaded nowhere and the Complaint shows expressly that the Debtors did *not* rely on any alleged misrepresentations concerning the amount due on the loan – the Debtors said nothing in response. *See* [Doc. 12] at pp. 6-7. The same goes for the fraudulent scheme and fraudulent intent of Nationstar.

The Debtors attempted to address damages by saying only that they "have asserted damages/harm in the form of threatened foreclosure action, inability to obtain the promised fresh start post-Chapter 13 discharge, the necessitation of re-opening the Chapter 13 case and commencing an adversary proceeding, and in becoming victims to improper mortgage accounting." *Id.* at p. 7. However, not only are these allegations wholly conclusory, but they are not plausible. "The proper measure of damages for fraud is that the injured party should be compensated for actual injuries sustained by placing him or her in the same position he or she would have been had the fraud not occurred." *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812 (Tenn. Ct. App. 1995) (citation omitted). None of the "damages" alleged by the Debtors even remotely relate to this standard. Supposedly "becoming victim to improper mortgage accounting" is not a measurable damage under this standard. Nor is the "inability to obtain the promise fresh start" or having to file a lawsuit. Quite simply, the Debtors have failed

4

to allege any facts showing that they have suffered compensable monetary damages as a result of any alleged fraud, and the claim must be dismissed.

D.     **THE DEBTORS HAVE FAILED TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION**

The next claim in the Complaint is for negligent misrepresentation, based on the same premise as the intentional misrepresentation claim. Thus, Nationstar argued that dismissal is appropriate for the same reasons. In response, the Debtors stated that they "justifiably rel[ied] on . . . false information in being forced into reopening their Chapter 13, filing this adversary proceeding, and being unable to take advantage of the fresh start associated with a Chapter 13 discharge." [Doc. 12] at pp. 7-8. However, this in no way shows reliance of anything. "An essential element of any action for fraud, deceit, failure to disclose or negligent or innocent misrepresentation is detrimental reliance on a false premise." *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000) (collecting cases). This means, in short, that the Debtors had to act in accordance with the alleged misrepresentation upon the belief that it was true. *See Brown v. Birman Managed Care, Inc.*, No. M1999-02551-COA-R3-CV, 2000 WL 122208, at *5 (Tenn. Ct. App. Feb. 1, 2000). The Debtors never alleged that they did so because they never paid the amounts that they claim were wrong. Their responsive arguments as to reliance simply do not show reliance. The negligent misrepresentation claim must be dismissed.

E.     **THERE ARE NO SPECIAL CIRCUMSTANCES PRESENT THAT COULD GIVE RISE TO A COMMON LAW DUTY FOR A NEGLIGENCE CLAIM TO SUCCEED**

Nationstar argued that the Debtors' negligence claim cannot go forward because Nationstar owes no common law duty to the Debtors under Tennessee law. *See* [Doc. 8-1] at p. 11. Tennessee law provides that "With respect to financial institutions in particular, 'Tennessee does not impose a common law duty on [such] institutions with respect to their customers,

5

depositors, or borrowers,' absent special circumstances." *Layne v. Ocwen Loan Servicing, LLC*, No. 4:17-CV-4, 2018 WL 1524608, at *7 (E.D. Tenn. March 28, 2018) (quoting *Permobil, Inc. v. Am. Express Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008)).

In response, the Debtors argue that this case constitutes a "special circumstance" that gives rise to a duty. Their reasoning is that there should be a special circumstance "in a situation where a mortgage company or servicer is improperly applying mortgage payments in direct contradiction to representations made under penalties of perjury to the bankruptcy court." [Doc. 12] at pp. 8-9. The Debtors, though, cited no law or any other authority to support their position and are seemingly conflating facts that give rise to a duty with the facts that give rise to a breach of that duty. The "special circumstances" are the circumstances that give rise to the relationship between the debtor and creditor. *See Phillips v. Bank of Am., N.A.*, No. 2:14-CV-170, 2016 WL 11597925, at *4 (E.D. Tenn. March 21, 2016) (citing *Power & Telephone Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006); *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 549-50 (Tenn. 1996); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)). Allegedly misapplying mortgage payments (the supposed breach) is of no consequence in a negligence context if there is no duty requiring the payments to be properly applied. Since the Debtors have failed to show that a duty exists, their negligence claim fails and must be dismissed.

**F.  THE BREACH OF CONTRACT CLAIM FAILS BECAUSE THERE IS NO PRIVITY**

With respect to the Debtors' breach of contract claim, Nationstar moved to dismiss the claim on the basis that there is no privity of contract between the Debtors and Nationstar and that the Debtors failed to plead facts showing damages. In response, the Debtors contend that privity exists because "Defendant owed (and owes) duties to act as Plaintiffs' point of contract,

determining the amount of Plaintiffs' monthly payments, taking Plaintiffs' monthly payment checks, and ultimately referring Plaintiff's home for foreclosure." [Doc. 12] at p. 9. To support this assertion, they cited to *Howell v. Betts*, 362 S.W.2d 924, 924-26 (Tenn. 1962). *Id.* However, the sole claim in *O'Connel v. Seterus, Inc.*, No. 13-cv-2916-dkv, 2015 WL 11117943, at *1 (W.D. Tenn. March 27, 2015) (quoting *Tipton v. Sparta Water Co.*, 57 S.W.2d 793, 795 (Tenn. 1933)). And with respect to their failure to plead damages, the Debtors offered nothing in response. Their breach of contract claims fails and should be dismissed.

G.     **NATIONSTAR IS ONLY A SERVICER SO IT CANNOT BE HELD LIABLE UNDER TILA**

Nationstar argued that it cannot be liable under TILA because it is the servicer, and not the creditor, of the Debtors' mortgage loan. Under TILA, only creditors or the creditor's assignee can be liable. *See* [Doc. 8-1] at p. 13. In response, the Debtors contend that this cannot be the case because the TILA claim against a service in *In re Cawood* survived a motion to dismiss. *See* [Doc. 12] at pp. 9-10. However, it does not appear that the servicer in *Cawood* raised the argument that it cannot be held liable under TILA. *See* 577 B.R. at 555 ("Seterus contends that Count 5 should be dismissed due to 'an absence of any factual allegations of unlawfully credited payments.'"). The fact of the matter is that binding Sixth Circuit authority explicitly holds that "TILA expressly exempts servicers from liability unless the servicer was also a creditor or a creditor's assignee." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013).

It is undisputed here that Nationstar is only a servicer, and the creditor's assignee is of U.S. Bank National Association as Indenture Trustee for Springleaf Mortgage Loan Trust 2013-2, Mortgage-Backed Notes Series 2013-2 ("U.S. Bank"). *See* [Claim No. 6]. Nevertheless, the Debtors argue, without any authority, that "[Nationstar] is a creditor for purposes of § 1639f as it is listed in several places on PACER as well as in the claims register itself as the direct addressee

7

for U.S. Bank." [Doc. 12] at p. 10. This argument is unsupported and nonsensical. Simply being listed on PACER or receiving mail on behalf of the creditor's assignee does not make Nationstar a creditor. The Debtors' claim against Nationstar for a TILA violation simply cannot prevail because Nationstar is only a servicer of their mortgage loan.

H.     THE DEBTORS HAVE FAILED TO STATE A CLAIM UNDER THE FDCPA

The next claim at issue is for violations of the Fair Debt Collection Practices Act ("FDCPA"). Nationstar argued that the claim should be dismissed because the Debtors failed to allege facts showing that Nationstar is a debt collector under the FDCPA and because they failed to allege actual damages. *See* [Doc. 8-1] at p. 15. The Sixth Circuit has made clear that to show that a defendant qualifies as a debt collector under the FDCPA, conclusory statements that an entity is a debt collector without any factual enhancement is insufficient to state a claim. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 365-66 (6th Cir. 2012). And here, the Debtors simply set forth one conclusory sentence that "[Nationstar] is in the business of collection of debts from consumers using the bankruptcy courts and appears in numerous bankruptcy cases around the country" and is therefore a debt collector. [Doc. 1] at ¶ 1.

The Debtors respond with a similarly conclusory argument that "[i]t is abundantly clear that Defendant is an entity which uses 'any instrumentality of interstate commerce . . . which regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another' as a mortgage servicer." [Doc. 12] at p. 10. Their only support is citing to Nationstar's website, which is both outside the pleadings (and thus cannot be considered) and fails to show what the Debtors think it does. The Debtors say that Nationstar's website says that it has "3.5 million nationwide consumers" and is "the 4th largest mortgage servicer in the world." *Id.* at p. 10 n.12. However, this in no way shows that Nationstar is regularly attempting to collect

"debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). After all, one can service a loan that is owed to them. The Debtors have failed to establish a threshold element of their FDCPA claim and it should be dismissed.

With respect to their failure to show actual damages, the Debtors responded that they "have identified problems associated with threatened foreclosure action, loss of the post-discharge Chapter 13 fresh start, and the necessitation of this adversary proceeding. Plaintiffs have also made clear in the Complaint that they were faced with considerable stress, increased attorney's fees, and costs associates with the reopening of their Chapter 13." [Doc. 12] at p. 10. To begin with, attorney's fees and costs are not actual damages, but are awarded only to a successful FDCPA plaintiff in addition to their actual damages. *See* 15 U.S.C. § 1692k(a)(3). The remainder of the allegations are wholly conclusory ("considerable stress") or cannot even be categorized as compensable damages. Identifying problems with a foreclosure cannot, in any sense, be a measurable damage, nor is "loss of the post-discharge Chapter 13 fresh start." The Debtors have utterly failed to plead facts showing actual damages because of any FDCPA violations and therefore if their claim can go forward at all, it should only be on the basis of statutory damages.

**I.     THE AUTOMATIC STAY DOES NOT APPLY TO THE FACTS OF THIS CASE**

The last claim in the Complaint is for alleged violations of the automatic stay. Nationstar's first argument in favor of dismissal was that there was no automatic stay in place as of May 20, 2020 (the date of discharge) and therefore the Debtors' allegations that actions taken in July 2020 could not violate the automatic stay. *See* [Doc. 8-1] at p. 16. In response, the

9

Debtors state that they "show that the case law is sparse on the subject" of whether "the automatic stay is no longer in effect upon reopening." [Doc. 12] at p. 11. First, the Debtors misconstrued Nationstar's argument. The case had not even been initially closed in July 2020, so reopening is not at issue. The automatic stay statute is clear that the stay terminated upon the granting of a discharge, and the Debtors do not refute that. *See* 11 U.S.C. § 362(c)(2)(B). Even if reopening was at issue, the reopening of a case does not reimpose the automatic stay. *See In re Suissa*, No. LA CV18-08785 JAK, 2019 WL 11717119, at *4 (C.D. Cal July 2, 2019) (citations omitted); *In re Maes*, No. 04-14871-j7, 2018 WL 3655381, at *2 (Bankr. D.N.M. July 31, 2018) (citations omitted). The Debtors' claim as it relates to actions taken after May 20, 2020, fails as a matter of law and must be dismissed.

The Debtors further alleged that Nationstar violated the automatic stay by its "failure to apply the Plaintiffs' payments timely . . . ." *See* [Doc. 1] at ¶ 105-106. Nationstar argued that "there are no facts alleged in the Complaint that Nationstar failed to do this at any time prior to May 20, 2020." [Doc. 8-1] at p. 16. There is only one document mentioned in the entire Complaint from prior to May 20, which is a statement from April 21, 2020. *See* [Doc. 1] at ¶ 21. Nationstar argued in its Motion to Dismiss that the Debtors did not allege any payment misapplications with respect to his statement. *See* [Doc. 8-1] at p. 16. The Debtors did not dispute or even respond to this contention, instead asserting only that the one case cited by Nationstar for the contention that payment misapplications – even if alleged here – do not violate the automatic stay, references cases that hold the opposite. *See* [Doc. 12] at p. 12. It is of no consequence that there may be cases going the other way, since there are no factual allegations showing any payment misapplications prior to the expiration of the automatic stay, and the

10

Debtors do not refute this point. Since those crucial allegations are missing, the Debtors have failed to state a claim for any violation of the automatic stay and the claim should be dismissed.

## CONCLUSION

Based on the foregoing, Nationstar respectfully renews its request that this Court grant its Motion to Dismiss.

Respectfully submitted, this 23rd day of June, 2021.

> */s/ Bret J. Chaness*
> BRET J. CHANESS (BPR # 31643)
> **RUBIN LUBLIN TN, PLLC**
> 3145 Avalon Ridge Place, Suite 100
> Peachtree Corners, GA 30071
> (678) 281-2730 (Telephone)
> (470) 508-9203 (Facsimile)
> bchaness@rlselaw.com
>
> *Attorney for Nationstar Mortgage LLC d/b/a Mr. Cooper*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2021, the within and foregoing was filed via CM/ECF, which will serve notice on all parties.

> */s/ Bret J. Chaness*
> BRET J. CHANESS (BPR # 31643)