**SIGNED this 10th day of June, 2022**

*Shelley D. Rucker*
_____
Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

In re:
**Lewis Edwin Culberson and
Patricia Dianne Culberson,**

    **Debtors.**

**No. 1:15-bk-15519-SDR**

**Chapter 13**


**Lewis Edwin Culberson and
Patricia Dianne Culberson,**

    **Plaintiffs,**

**v.**

**Nationstar Mortgage, LLC *dba* Mr. Cooper,**

    **Defendant.**

**Adv. No. 1:21-ap-01012-SDR**

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

    Plaintiffs Lewis Edwin Culberson and Patricia Dianne Culberson, the debtors in Case No.

1:15-bk-15519-SDR (the "Main Case"), fell behind in the mortgage payments for their residence

in 2015 and faced foreclosure in early 2016. The Culbersons filed their Chapter 13 voluntary

petition in the Main Case on December 18, 2015 and received confirmation of their plan, with no

objections, on January 28, 2016.  Over the course of the plan, the Culbersons made their plan payments without any problems that might have prompted motions to dismiss from the Trustee or motions for relief from any creditors, including mortgage lender U.S. Bank National Association as Indenture Trustee for Springleaf Mortgage Loan Trust 2013-2 (the "Lender") and mortgage servicer Nationstar Mortgage, LLC *d/b/a* Mr. Cooper ("Mr. Cooper"), the defendant here.  When the Culbersons complleted their plan payments in 2020, they received a discharge, and the Trustee filed a notice under Bankruptcy Rule 3002.1(f) confirming that they were current on their mortgage loan.  The Lender filed a response agreeing that the Culbersons were current, and the Main Case soon closed.

Despite the confirmed plan, the regular payments, the lack of any motions to dismiss for nonpayment, the discharge, and the confirmation that the loan was current under Bankruptcy Rule 3002.1, Mr. Cooper—at least once before discharge and numerous times after discharge—began sending the Culbersons notices that it labeled "informational" and letters from "dedicated loan specialists" that showed amounts due in excess of the actual amounts past due.  To stop the repeated notices about default and foreclosure, the Culbersons had the Main Case reopened and commenced this adversary proceeding against Mr. Cooper.   In the adversary complaint, the Culbersons asserted a number of theories of liability against Mr. Cooper including intentional and negligent misrepresentation, negligence, breach of contract, federal consumer-protection violations, and a violation of the automatic stay.  Mr. Cooper responded with a motion to dismiss (Doc. No. 8) under Civil Rule 12(b)(1) and 12(b)(6), made applicable through Bankruptcy Rule 7012.  In short, Mr. Cooper argues that the Court lacks subject-matter jurisdiction over nearly all of the claims in the complaint; in the alternative, Mr. Cooper argues that the Culbersons failed to

state a claim for torts usually governed by state common law; failed to state a claim under federal consumer-protection laws because they asserted no actual damages among other deficiencies; and failed to state a claim for a violation of the automatic stay because any automatic stay in the Main Case expired upon discharge.  The Culbersons argue against dismissal by noting the contradiction between the confirmation that they were current under procedures provided in Bankruptcy Rule 3002.1; and the notices that followed.  The Culbersons also filed a motion (Doc. No. 20) for leave to amend their complaint to expand on their alleged violation of the automatic stay and to add a claim for a violation of their discharge injunction.  Mr. Cooper considers the proposed amendments futile given the jurisdictional and other substantive defects that it identified in its pending motion.

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334.  This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (G) because the motion potentially implicates the automatic stay that had been in place.  Consistent with *Stern v. Marshall*, 564 U.S. 462 (2011), Mr. Cooper implicitly has consented to final judgment through the proof of claim that was filed for the mortgage loan in the Main Case and through the filing of a Civil Rule 12 motion that requires jurisdictional and other dispositive rulings.  *See also The Strauss Co., Inc. v. Jarrett Builders, Inc. (In re Strauss Co., Inc.)*, No. 1:18-BK-12972-SDR, 2021 WL 4436159, at *4 (Bankr. E.D. Tenn. Sept. 27, 2021).  The Court held oral argument on October 28, 2021.  For the reasons below, the Court will grant Mr. Cooper's motion in part and will deny it in part.  The Court also will grant the Culbersons' motion to amend in part and deny it in part.

## II.    BACKGROUND[1]

This adversary proceeding concerns allegations that Mr. Cooper insisted on collecting mortgage payments that the Culbersons already had paid through their plan and that the Lender agreed had been paid.  The events leading to the pending motions unfolded in three stages.

### A.    The Culbersons Proceed Through the Main Case

In 2008, the Culbersons borrowed $65,786.42, at 12.45% interest over 20 years, from a predecessor of the Lender to buy their residence in Delano, Tennessee.  (Main Case Claim 6-1 at 9.)  At some point in the next seven years, the Culbersons defaulted on their mortgage payments, and Mr. Cooper, as the mortgage servicer, scheduled a non-judicial foreclosure for January 14, 2016.[2]  To stop the foreclosure, the Culbersons commenced the Main Case by filing a voluntary Chapter 13 petition on December 18, 2015.  (Main Case Doc. No. 1 at 3.)  On January 26, 2016, the meeting of creditors occurred, but no creditors appeared.  Two days later, on January 28, 2016, the Court confirmed the Culbersons' plan.  (Main Case Doc. No. 19.)  Under the plan, the Culbersons would pay the Trustee a monthly payment of $1,383.00 for 60 months; the Trustee, in turn, would make a monthly maintenance payment on the mortgage of $819.00 and an arrearage payment of $260.00.  The Court approved a plan modification in late 2016 that allowed the maintenance payment to change to match any notices that Mr. Cooper filed regarding changes in the mortgage payment.  (Main Case Doc. No. 34.)  The last notice of mortgage payment change filed in the Main Case, dated April 29, 2020, showed that the total monthly payment that the Culbersons needed to make changed to $964.65 from the $941.90 set a year earlier.  On May 18,

---

[1] For the sake of brevity and consistent with Civil Rule 12, the Court will refrain from repeated use of the words "alleged" or "allegedly."  Nothing in this Background section constitutes a finding of fact unless otherwise noted.

[2] The complaint lists a foreclosure date of January 14, 2015 (Doc. No. 1 at 3), but given the date when the Main Case began, the Culbersons likely intended 2016 instead.

2020, the Trustee filed a certification that the Culbersons completed all payments required under the plan. (Main Case Doc. No. 36.) Two days later, on May 20, 2020, the Culbersons received their order of discharge. (Main Case Doc. No. 40.) On June 17, 2020, the Trustee filed the notice of final cure payment required under Bankruptcy Rule 3002.1(f), confirming that the Culbersons paid off the entire arrearage and were current with monthly payments through May 2020; the next post-petition payment would be due in June 2020. (Main Case Doc. No. 43.) On July 7, 2020, the Lender responded, pursuant to Bankruptcy Rule 3002.1(g), with a confirmation that the Culbersons had a zero balance for pre-petition and post-petition arrearages. Lender agreed that the next payment due would be for June 2020. (Main Case, Doc. Dated July 7, 2020.) The Main Case closed with a final decree issued on August 11, 2020. (Doc. No. 45.)

### B.  *Mr. Cooper Sends the Culbersons Pre- and Post-Plan Deficiency Notices*

Despite the final plan payment, the discharge, and the confirmation of a zero balance, Mr. Cooper sent notices to the Culbersons that contradicted the loan's current status. On April 21, 2020, prior to discharge, Mr. Cooper sent the Culbersons a notice with a "voluntary payment coupon" to be detached and returned by May 12, 2020. (Doc. No. 1-2 at 1.) Mr. Cooper titled the notice an "Informational Statement" and acknowledged that the Culbersons were in bankruptcy; nonetheless, the document contained the voluntary payment coupon, which reflected that the amount due was $5,651.40; and a payment due date of May 12, 2020 that preceded the discharge by eight days. The payment due was much larger than the zero balance reported in the Response filed seven weeks later. The Informational Statement reflected that no amount had been applied to the arrearage in the prior month. It also reflected the application of two payments on March 31, 2020 from a suspense adjustment. The Trustee's disbursement report shows only one payment a month for the preceding five months. (Doc. No. 1-1.) Finally, the Informational Statement advised

5

the Culbersons to contact their attorney if they had any questions about the application of

payments.  On June 9, 2020, Mr. Cooper sent the Culbersons a letter advising them that their

February 2020 mortgage payment was past due and that they owed a total deficiency of $4,834.70.

(Doc. No. 1-3 at 1.)  The letter identified Mr. Cooper as a debt collector and confirmed that the

letter was "an attempt to collect a debt and any information obtained will be used for that purpose."

(*Id.*)    The letter continued, "However, if you are currently in bankruptcy or have received a

discharge in bankruptcy, this communication is not an attempt to collect a debt from you personally

to the extent that it is included in your bankruptcy or has been discharged, but is provided for

informational purposes only." (*Id.*)  Mr. Cooper again advised the Culbersons to send the letter to

an attorney.  (*Id.*)  Mr. Cooper warned the Culbersons that failure to pay the entire balance by July

14, 2020 "may result in acceleration of the sums secured by the Security Instrument, foreclosure

proceedings and sale of the property." (*Id.* at 2.)  Just seven days later, on June 16, 2020, Mr.

Cooper sent the Culbersons a letter identical to the June 9 letter in all the substantive aspects that

the Court cited above.  (Doc. No. 1-6.)  The only differences were that Mr. Cooper asserted that

the Culbersons missed their March 2020 payment and that the total deficiency was $5,426.00, due

by July 21, 2020.  Just three days later, on June 19, 2020, Mr. Cooper sent the Culbersons another

letter advising of missed payments for March through June 2020; declaring a total deficiency of

$4,805.71; and suggesting that "an alternative to foreclosure may be selling your home and using

the proceeds to pay off your current loan.  A short payoff may be acceptable, or a deed in lieu of

foreclosure may be an option." (Doc. No. 1-7 at 1.)  An accompanying document titled a mortgage

loan statement listed a late charge of $37.26 assessed on June 18, 2020 in connection with the

purported amount due of $4,805.71.  (Doc. No. 1-8 at 1.)  Another letter from Mr. Cooper to the

Culbersons, dated June 25, 2020, asserted a missed payment for April 2020 and a total deficiency of $3,632.31.  (Doc. No. 1-11.)  The June 25 letter was substantively identical to the June 9 and June 16 letters.  After filing its Rule 3002.1(g) response stating that the loan was current, Mr. Cooper sent the Culbersons other letters and mortgage loan statements as well, on July 21, August 19, September 21, October 20, November 19, and December 15, 2020; and January 13, 2021. (Doc. Nos. 1-14, 1-15, 1-16, 1-17, 1-19, 1-21, 1-23.)

The letters that Mr. Cooper sent the Culbersons contrast with receipts of payments that the Culbersons appear to have made regularly to stay current on their mortgage after their discharge. The Culbersons attached to the complaint copies of postal money order receipts that show the following payments:

| Date | Payment Amount |
|---|---|
| June 24, 2020 | $975.00 |
| July 22, 2020 | $1,002.00 |
| August 26, 2020 | $975.00 |
| September 30, 2020 | $975.00 |
| October 28, 2020 | $975.00 |
| November 25, 2020 | $975.00 |
| December 4, 2020 | $975.00 |
| December 31, 2020 | $970.00 |
| January 29, 2021 | $970.00 |

(Doc. Nos. 1-9 at 1; 1-18 at 1; 1-20 at 1; 1-22 at 1; 1-24 at 1.)  Mr. Cooper's log of transaction activity shows several entries for payments, but it is difficult to find a direct correlation.  For example, the mortgage loan statement of July 21, 2020 included a log of transaction activity in the Culbersons' account between June 20 and July 2, 2020.  (Doc. No. 1-14 at 2.)  The $975.00 that

the Culbersons sent on June 24, 2020 does not easily match any of the three dozen entries made

between June 24 and July 2 in the log.  Payment credits were reversed and recalculated, with some

portions applied to an escrow payment, legal fees, and a transaction labeled as an "adjustment for

forbearance suspense."  (*Id.*)  To take another example, the log of transaction activity from July

22 to August 19, 2020 seems to acknowledge the Culbersons' July 22 payment, but Mr. Cooper

broke down the payment into line items for a payment, an interest-only payment, and a principal

payment.  (Doc. No. 1-15 at 2.)  To the extent that Mr. Cooper's transaction log shows payments

toward interest versus principal; late fees; and legal fees that were not disclosed to the Culbersons

in advance, these transactions prompted the Culbersons to believe "that Defendant's failure to

credit payments resulted in late fees and a delinquent balance on their mortgage loan."  (Doc. No.

1 at 13.)

### C.  The Culbersons Re-Open the Main Case to Commence This Case

Faced with repeated communications that reflected current payment amounts in excess of

their current monthly payments, added interest and fees, and threatened foreclosure for unpaid

arrearages—the reason for bringing the Main Case in the first place—the Culbersons returned to

this Court for redress.  The Culbersons filed their adversary complaint on March 18, 2021; on

March 25, 2021, they made a motion in the Main Case to reopen that case to permit adversary

proceedings.  No one opposed the motion to reopen, and the Court granted the motion on April 9,

2021.

In their adversary complaint, the Culbersons recited the facts summarized above and cited

additional correspondence that they received from Mr. Cooper whenever someone new was

assigned to them as their dedicated loan specialist.  (*See, e.g.*, Doc. No. 1-4.)  According to the

Culbersons, "[n]o one in [each new specialist's] department checked or confirmed the Chapter 13

8

Trustee records reflecting payments sent to Mr. Cooper from the Debtors' bankruptcy case, prior to sending the letter." (Doc. No. 1 at 6.) The Culbersons summarized the problem that they face by emphasizing that

> [t]he Defendant's actions were not harmless. The Plaintiffs have been threatened with a foreclosure action within approximately twenty (20) days after the entry of the Order of Discharge based on improperly alleged unpaid mortgage payments.
>
> As a result of the Defendant's negligence in failing to properly apply Plaintiffs' plan payments to cure the arrears, Plaintiffs have suffered damages, including attorney's fees, costs of this action, and additional stress due of believing a foreclosure could be imminent.
>
> The Plaintiffs have also been unable to obtain their fresh start after successfully completing their Chapter 13 case with this Court.
>
> The Defendant does not have the proper procedures in place to properly credit Chapter 13 Trustee payments and correctly process the Notice of Final Cure that the Chapter 13 Trustee is required to file.

(*Id.* at 10.)

The Culbersons' complaint contains eight claims. In the first claim, the Culbersons seek a determination of the validity and amount of Mr. Cooper's lien under Bankruptcy Rule 7001(2). In the second claim, the Culbersons accuse Mr. Cooper of intentional misrepresentation; "by informing Plaintiffs that their mortgage loan was in default, [Mr. Cooper] intentionally made misrepresentations which were false when the misrepresentations were made. In each mortgage statement improperly showing that Plaintiffs were in default, [Mr. Cooper] intentionally ignored the Chapter 13 Trustee's Notice of Final Cure and intentionally misrepresented the status of the Plaintiffs' loan." (*Id.* at 11.) In the third claim, the Culbersons assert that "[e]ach occurrence of correspondence from Defendant to Plaintiffs identifying that their mortgage was in default and in arrears serves as a negligent misrepresentation of the true status of the Plaintiffs' mortgage loan

pursuant to the Chapter 13 Trustee's Notice of Final Cure." (*Id.* at 12.)  In the fourth and fifth

claims, the Culbersons accuse Mr. Cooper of common-law negligence and breach of contract based

on mortgage statements containing false information.  In the sixth claim, the Culbersons accuse

Mr. Cooper of violating Section 1639f(a) of the Truth in Lending Act ("TILA"), 15 U.S.C. §§

1601–1667f, by failing "to credit payments to Plaintiffs' account as of the date of receipt of said

payments." (*Id.* at 13.)  In the seventh claim, the Culbersons accuse Mr. Cooper of violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, by trying to collect a

debt using false information and harassing behavior.  Finally, in the eighth claim, the Culbersons

accuse Mr. Cooper of violating the automatic stay from the Main Case by identifying their

mortgage to be in default prior to May 2020 despite confirming that they had a zero balance as of

May 2020.

### D.  Mr. Cooper's Motion to Dismiss

Mr. Cooper filed its pending motion on May 13, 2021.  Mr. Cooper argues that the Court

lacks subject-matter jurisdiction over the first seven claims in the complaint.  Mr. Cooper first

argues that Counts I–VII are based on state law or nonbankruptcy federal law and are therefore

not claims that arise under Title 11:

> Except for the last claim in the Complaint—for alleged violations of the
> automatic stay—every other claim is brought under either state law or federal non-
> bankruptcy law.  *See* [Doc. 1] at ¶¶ 76-103.  Such claims do not arise under title 11
> because the causes of action are not under the Bankruptcy Code and they do not
> arise in a case under title 11 because those claims are those that can *only* arise in a
> bankruptcy case.  *See In re Perry*, 388 B.R. at 337; *see also Best Bank, SSB v.
> Prince (In re Prince)*, Nos. 108-0146, 108-0164, 2008 WL 4498948, at *2 (Bankr.
> M.D. Tenn. Aug. 19, 2008) (citing *In re Wolverine Radio Co.*, 930 F.2d 1132 (6th
> Cir. 1991)).  State law and federal non-bankruptcy claims certainly do not arise
> only in bankruptcy cases.  In fact, the Sixth Circuit has stated that "claims such as
> 'lender liability [and] common law fraud . . . are not ones which 'arise in' a title 11
> case because they could arise in cases other than bankruptcy proceedings.'" *Grant.
> Konvalinka & Harrison, P.C. v. Still (In re McKenzie)*, 471 B.R. 884, 897 (Bankr.

> E.D. Tenn. 2012) (quoting *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 n.4 (6th Cir. 1993)). Thus, the only basis for this Court to hear the claims could be under its "related to" jurisdiction. However, that does not exist here because there is no estate which can benefit from any recovery since the plan is complete and the Debtors have received a discharge. *See In re Dow Corning Corp.*, 86 F.3d at 489; *In re Otero*, 2013 WL 4017142, at *2; *Atwood v. GE Money Bank*, 452 B.R. 249, 256 n.19 (Bankr. D.N.M. 2011). As such, all claims except the final claim in the Complaint for violation of the automatic stay should be dismissed for lack of subject matter jurisdiction.

(Doc. No. 8-1 at 7–8.)  Mr. Cooper makes the additional jurisdictional attack that the first claim relies too much on a procedural rule to furnish a substantive basis for relief. "Rule 7001(2) is a procedural rule only. Thus, it does not create a substantive cause of action." (*Id.* at 6.)

To the extent that the Court might hold that it has jurisdiction, Mr. Cooper argues that the Culbersons have failed to state any cognizable claims with respect to a number of the counts. Mr. Cooper argues that the dispute over payment misapplications has nothing to do with the validity or extent of any lien. In fact, Mr. Cooper defends at least some of the mortgage statements by asserting that the Culbersons "did not make any payments following the Trustee's final cure payment until July 22[, 2020]." (*Id.* at 3.) The claims for intentional and negligent misrepresentation fail, according to Mr. Cooper, because the Culbersons knew that the amounts in the notices were inaccurate and never paid them. (*See id.* at 9 ("There are no facts pleaded to show that the Debtors relied on any of these alleged misrepresentations to their detriment. In fact, the Debtors affirmatively pleaded that they did *not* rely on the supposed misrepresentations because they alleged that they only paid $970.00 or $975.00 in response to statements showing a much higher amount due.").) The Culbersons thus would not be able to show detrimental reliance on the statements. The Culbersons cannot allege negligence or breach of contract, according to Mr. Cooper, because Mr. Cooper owes them no duties, absent special circumstances not present here, and because the Lender is the only entity that entered a contract with them. The Truth in Lending

claim fails, in Mr. Cooper's view, because TILA created a private right of action against lenders but not servicers. With respect to the claim under the FDCPA, Mr. Cooper asserts that it is not a debt collector and that the Culbersons have not shown any actual damages. Finally, Mr. Cooper argues that no violation of the automatic stay could have occurred because, despite the contents of any correspondence, the Culbersons have not alleged receiving any letters or facing any actions prior to their discharge on May 20, 2020. Once the Culbersons received their discharge, according to Mr. Cooper, the automatic stay ended.

The Culbersons oppose the pending motion in nearly all respects. The Culbersons conceded at oral argument that a violation of the automatic stay would not have occurred for events that happened after May 20, 2020. The Culbersons otherwise argue that this Court has jurisdiction over all of their claims, relying heavily on *Cawood v. Seterus, Inc. (In re Cawood)*, 577 B.R. 538 (Bankr. E.D. Tenn. 2017). Among other points, the Culbersons interpret *Cawood* to mean that "this Court highlights the crucial distinction that any potential recovery in this matter would benefit the estate." (Doc. No. 12 at 3.) *Cawood*, in the Culbersons' view, also forms the basis for a cognizable claim about the validity and extent of their lien with the Lender. The Culbersons defend their misrepresentation claims by showing how they pled that Mr. Cooper intentionally sent repeated letters despite knowing that the balances in those letters were wrong. As for reliance, the Culbersons believed that their home was sufficiently at risk to employ counsel to reopen their case to seek protection. The Culbersons argue that, even if Mr. Cooper was not in privity with them, it owed them a duty to handle their mortgage loan properly; their reliance on Mr. Cooper's statements was foreseeable. The Culbersons disagree with Mr. Cooper over whether TILA reaches loan servicers. Regarding the FDCPA, the Culbersons note that Mr. Cooper's own letters identify it as

12

a debt collector; they have pled the damages of additional stress, plus costs and fees, stemming from the threat of foreclosure.  Finally, while acknowledging "that the case law is sparse on the subject" (*id.* at 11), the Culbersons argue that reopening a bankruptcy case to continue proceedings in it implies that the automatic stay would resume, meaning that further efforts to collect outstanding balances would violate the automatic stay.

Mr. Cooper filed reply papers on June 23, 2021, largely emphasizing its prior arguments but also noting that "[t]he problem with the Debtors' reliance on *Cawood*, however, is that the debtor there was in the midst of his Chapter 13 case when the adversary was filed.  He filed for Chapter 13 bankruptcy on August 12, 2014, and the adversary was filed on August 11, 2015.  A review of the docket in the underlying case shows that the debtor did not obtain a discharge until November 24, 2020.  Thus, there was clearly an estate that could benefit from a recovery in *Cawood*."  (Doc. No. 14 at 2 (citations omitted).)

### E.  The Culbersons' Motion for Leave to Amend

On August 9, 2021, while the motion to dismiss was still pending, the Culbersons filed a motion for leave to amend their complaint.  (Doc. No. 20.)  The Culbersons propose two substantive changes in response to questioning during oral argument for the motion to dismiss. The first substantive change in the proposed amended complaint concerns the eighth claim for a violation of the automatic stay—specifically, a change in paragraph 107.  The original paragraph 107 runs one sentence long: "As a result of these willful violations by Defendant, Plaintiffs have been injured and have been unable to take advantage of the fresh start promised to them upon receiving a discharge."  (Doc. No. 1 at 15.)  The proposed amended paragraph 107 remains consistent with the Culbersons' prior concession that a violation of the automatic stay would not have occurred for events that happened after May 20, 2020.  Nonetheless, the proposed amended

13

paragraph 107 would change the Culbersons' theory of liability to describe harm to them that would have originated while the automatic stay was in effect:

> This willful violation of the automatic stay by the Defendant has caused the Plaintiffs to suffer damages. Not only were they forced to reopen their bankruptcy case due to threats of foreclosure, but when the Defendant misapplied the payments it was receiving under the confirmed plan, which they were not owed based on both the Trustee's Notice of Final Cure and the Defendant's Response to said notice, Defendant was causing the Plaintiffs to suffer damages due to the improper collection during the bankruptcy case.

(Doc. No. 20-2 at 15.) The proposed amended paragraph 107 tracks the holding, in a bankruptcy court opinion issued earlier this year, that a debtor could seek damages under 11 U.S.C. § 362(k) where a misapplication of payments under a confirmed plan created an incorrect balance at discharge and, in turn, led to post-discharge demands of amounts that already had been paid during the plan. *Bivens v. NewRez LLC (In re Bivens)*, 625 B.R. 843, 850 (Bankr. M.D.N.C. 2021) (*cited in* Doc. No. 20-3 at 4 n.3).

The second substantive change in the proposed amended complaint would add a new ninth claim under 11 U.S.C. § 524(i) for a violation of the discharge injunction. Similar to the proposed amended paragraph 107, the proposed ninth claim stems from the Culbersons' theory that Mr. Cooper improperly applied their payments throughout the life of their confirmed plan:

> Defendant, by failing to credit payments received under the Court's Order Confirming Chapter 13 Plan [Doc No. 19] in a proper manner, violated the discharge injunction statutorily provided for pursuant to 11 U.S.C. § 524(a)(2) via 11 U.S.C. § 524(i).

> This improper application of payments and failure to credit payments by Defendant caused material injury to the Plaintiffs ranging from an improperly accounted higher balance on their mortgage note, the necessitation of reopening their Chapter 13, and creation of serious emotional distress and anxiety due to threatened foreclosure action immediately post-discharge.

> Defendant, as a result of its violation of 11 U.S.C. § 524(i) and the discharge injunction, is liable to the Plaintiffs for all actual, statutory, and punitive damages,

14

including costs and attorney fees, and should be held in contempt and be liable for
any contempt sanctions imposed by this Court pursuant to 11 U.S.C. § 105.

(Doc. No. 20-2 at 16.)  The proposed ninth claim tracks the additional holding in *Bivens* that

"where a creditor misapplies payments under a confirmed plan and then transfers the account with

records showing an incorrect payment history and inflated loan balance, causing injury to the

plaintiff, that those actions could constitute a violation of § 524(i)."  625 B.R. at 849 (citing

*Williams v. CitiFinancial Servicing LLC (In re Williams)*, 612 B.R. 682, 693–94 (Bankr. M.D.N.C.

2020)).  The Culbersons argue that both proposed changes would cause no prejudice or undue

delay at this very early stage of the case.  Additionally, although neither side has referred to any

statute of limitations that would be implicated by the proposed amended complaint, the Culbersons

assert that there proposed amendments relate back to the same conduct described in the original

complaint.

Mr. Cooper opposes the motion to amend on the basis that the proposed amendments are

"only two small changes" that are futile and that "can effectively be decided on the briefs without

a hearing."  (Doc. No. 21 at 2.)

## III.  DISCUSSION

### A.  *Motions to Dismiss Generally*

The Court begins by assessing Mr. Cooper's arguments about subject-matter jurisdiction:

Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of
subject matter jurisdiction.  A Rule 12(b)(1) motion for lack of subject matter
jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the
factual existence of subject matter jurisdiction (factual attack).  A facial attack goes
to the question of whether the plaintiff has alleged a basis for subject matter
jurisdiction, and the court takes the allegations of the complaint as true for purposes
of Rule 12(b)(1) analysis.  A factual attack challenges the factual existence of
subject matter jurisdiction.  In the case of a factual attack, a court has broad
discretion with respect to what evidence to consider in deciding whether subject
matter jurisdiction exists, including evidence outside of the pleadings, and has the

15

power to weigh the evidence and determine the effect of that evidence on the court's
authority to hear the case.  Plaintiff bears the burden of establishing that subject
matter jurisdiction exists.

*Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (citations omitted).  Here, Mr. Cooper

does not distinguish facial attacks from factual attacks in its motion papers, and neither party has

asked the Court to make any findings resolving factual disputes that affect jurisdiction.  Therefore,

the Court sees no need to conduct any hearings or to gather any evidence for facts that might affect

jurisdiction.  The Court thus will take the allegations of the complaint as true and will assess Mr.

Cooper's arguments under Civil Rule 12(b)(1) as a facial attack.

To the extent that the Court needs to review whether the Culbersons' claims are legally

cognizable, the standard under Civil Rule 12(b)(6) is well known:

> To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to state a claim to relief that is plausible on its face.  A
> claim has facial plausibility when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant is liable for the
> misconduct alleged.  The plausibility standard is not akin to a probability
> requirement, but it asks for more than a sheer possibility that a defendant has acted
> unlawfully.  Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility and plausibility
> of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  "We

are required to construe the complaint in the light most favorable to the plaintiff, accept its

allegations as true, and draw all reasonable inferences in favor of the plaintiff.  Nevertheless, we

need not accept as true any conclusory legal allegations that do not include specific facts necessary

to establish the cause of action.  The plaintiff's complaint instead must contain either direct or

inferential allegations with respect to all material elements necessary to sustain a recovery under

some viable legal theory."  *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (internal

quotation marks and citations omitted).

16

The Court also must review the principles governing the documents that the parties have filed so far in the record. "In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citations omitted). "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (internal quotation marks and citation omitted). Applying these principles, the Court has considered several documents that are attached to the complaint. They include copies of letters and loan statements, summarized above, that Mr. Cooper sent the Culbersons in 2020 and early 2021. The complaint also includes a copy of the Lender's July 7, 2020 Response, confirming the Culbersons' current status at the conclusion of their plan. These documents are integral to the complaint because they form the core of every theory of liability that the Culbersons have pled. *Cf. Irwin v. Fed. Home Loan Mortg. Corp.*, No. 13-CV-14030, 2014 WL 12573529, at *2 (E.D. Mich. Feb. 19, 2014) (mortgage and foreclosure documents properly considered on Civil Rule 12(b)(6) motion; documents were either attached to the complaint or attached to the motion papers and integral to the complaint); *Keyes v. Deutsche Bank Nat. Tr. Co.*, 921 F. Supp. 2d 749, 754 (E.D. Mich. 2013) (mortgage and foreclosure documents properly considered on Civil Rule 12(c) motion where attached to either the complaint or the answer). Accordingly, the Court has considered these documents when assessing the pending motion and the parties' arguments.

The Court will apply the above principles to each of the Culbersons' claims, in turn.

### B.  First Claim: Bankruptcy Rule 7001(2) and Validity and Amount of the Lien

The Court now will review the Culbersons' first claim for a determination of the validity

and amount of their mortgage obligation.  Assessing Mr. Cooper's jurisdictional attack on the

Culbersons' first claim requires examining what Bankruptcy Rule 7001(2) does and does not do.

"Clause (2) of Rule 7001 provides that a proceeding to 'determine the validity, priority, or extent

of a lien or other interest in property' is an adversary proceeding."  10 *Collier on Bankruptcy*

§ 7001.03 (16th ed. and Supp. 2022).  Examples of adversary proceedings that fall under

Bankruptcy Rule 7001(2) are avoidance of liens as voidable preferences; invalidation of tax liens;

determination of the priority of multiple liens on the same property; and settling the ownership of

stock in a debtor corporation.  *See id.*  These non-exhaustive examples are consistent with how

courts have interpreted the three main terms in Bankruptcy Rule 7001(2):

> "Validity" for purposes of Fed. R. Bankr.P. 7001(2) means the existence or
> legitimacy of the lien itself.  "Priority" means the lien's relationship to other claims
> or interests in the collateral.  Finally, "extent" means the scope of the property
> encompassed by or subject to the lien.

*In re Bennett*, 312 B.R. 843, 847 (Bankr. W.D. Ky. 2004) (citing *In re Millspaugh*, 302 B.R. 90,

96 (Bankr. D. Idaho 2003)) (other citations omitted).  In a prior consideration of the term "extent

of the lien," this Court allowed a request to determine the amount of the lien to be included in a

determination of *extent*.  *Cawood*, 577 B.R. at 549.  Unlike the plaintiff in *Cawood*, Mr. Cooper

directly argues that this case does not require a determination of the amount of the arrearage and,

therefore, that the Culbersons cannot rely on *extent* as a basis for court jurisdiction.  The

Culbersons are not seeking to unwind any voidable preferences, to determine the priority of

competing liens, or to settle any ownership disputes.  Bankruptcy Rule 7001(2) is not the means

by which to pursue that claim.  *Cf. In re Johnson*, No. 11-34867, 2012 WL 1565125, at *3 (Bankr.

E.D. Tenn. May 1, 2012) (Stair, *J.*) (dismissing a Bankruptcy Rule 7001(2) claim on Civil Rule

12(b)(6) grounds, where the plaintiff was not challenging the nature, extent, or validity of a lien

but rather the defendants' standing to enforce it).  The Court thus finds that it would have had

subject-matter jurisdiction over a proper Bankruptcy Rule 7001(2) claim but that the Culbersons

have not submitted one.  Accordingly, Mr. Cooper's motion with respect to the first claim of the

complaint is denied on Civil Rule 12(b)(1) grounds but is granted on Civil Rule 12(b)(6) grounds.

### C.  State Law Tort Claims: Intentional Misrepresentation, Negligent Misrepresentation, and Negligence

The Culbersons' second, third, and fourth claims are based on Tennessee tort law.  The

second claim seeks damages for intentional misrepresentation, the third for negligent

misrepresentation, and the fourth for negligence.  With respect to the second and third causes of

actions, the Culbersons have identified the misrepresentations as the statements regarding

payments due made in the April 2020 Informational Statement and repeated in series of letters and

notices sent to the debtors in June through November of 2020.  The Culbersons allege that Mr.

Cooper repeatedly communicated to them that they had an unpaid balance, and hence, an uncured

default that would entitle Mr. Cooper to pursue foreclosure and collection.  There is no dispute

that those statements were inaccurate.  While Mr. Cooper argues that there are other defenses to

the Culbersons' claims, its first challenge is to this Court's jurisdiction to hear these claims.  Mr.

Cooper argues that this Court cannot hear state-law causes of action, even if they are based on

misrepresentations about the status of a mortgage loan made while a bankruptcy case was pending.

The only accurate representation about the status of the loan made by Mr. Cooper between

April 2020 and August 2020, when the case was closed, was made in its Response to the Chapter

13 Trustee's Notice of Final Payment.  There, Mr. Cooper stated that there all the prepetition

defaults were cured and that all the postpetition payments were made.  The Culbersons have not

pled that Mr. Cooper's Response was false.  Had Mr. Cooper itemized the same payments due

reflected in its April and June communications, as it was required to do under Bankruptcy Rule

3002.1(g), the Culbersons could have sought a determination of final cure and payment under

Bankruptcy Rule 3002.1(h).  But Mr. Cooper did not do so, and no further proceedings were

brought under Bankruptcy Rule 3002.1.  Now Mr. Cooper argues that, because the case proceeded

to a discharge and closure, the Court has no jurisdiction over these state-law claims of

misrepresentations.  After reviewing the limits placed on a bankruptcy court's jurisdiction, even

under these circumstances, this Court agrees.

Bankruptcy courts have jurisdiction over adversary proceedings "arising under title 11, or

arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  The phrases in Section 1334(b)

work together:

> For the purpose of determining whether a particular matter falls within
> bankruptcy jurisdiction, it is not necessary to distinguish between proceedings
> "arising under", "arising in a case under", or "related to a case under", title 11.
> These references operate conjunctively to define the scope of jurisdiction.
> Therefore, it is necessary only to determine whether a matter is at least "related to"
> the bankruptcy.  The Act does not define "related" matters.  Courts have articulated
> various definitions of "related", but the definition of the Court of Appeals for the
> Third Circuit appears to have the most support: "whether the outcome of that
> proceeding could *conceivably* have any effect on the estate being administered in
> bankruptcy."

*Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (citations omitted); *accord Giese v.*

*Lexington Coal Co. (In re HNRC Dissolution Co.)*, 761 F. App'x 553, 559 (6th Cir. 2019)

(unpublished opinion); *Michigan Emp. Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine*

*Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir. 1991).  "Stated another way, a claim is 'related to' the

bankruptcy proceeding if it would have affected the debtor's rights or liabilities."  *Browning v.*

*Levy*, 283 F.3d 761, 773 (6th Cir. 2002) (citation omitted); *see also Bush v. United States*, 939

F.3d 839, 846 (7th Cir. 2019) (bankruptcy court had jurisdiction over a tax dispute because of the

potential impact on allocation of assets among creditors).

Mr. Cooper challenges the Court's subject-matter jurisdiction to hear the misrepresentation

and negligence claims noting, first, that state-law tort claims do not arise under any particular

section of the Bankruptcy Code.  28 U.S.C. § 1334(b).  The Court agrees that Mr. Cooper has

accurately stated the law generally, but the argument downplays the misrepresentations that were

made both before and after the required Bankruptcy Rule 3002.1(g) Response.  "Rule 3002.1 was

adopted in December 2011 to address a significant problem caused when mortgage companies

applied fees and costs to a debtor's mortgage while the debtor was in bankruptcy without giving

notice to the debtor and then, based on these post-petition defaults, sought to foreclose upon the

debtor's property after the debtor completed the plan.  Rule 3002.1 deals with this problem by

requiring notice of payment changes and providing an opportunity for the debtor to contest them

during the chapter 13 case." *In re Tollios*, 491 B.R. 886, 888 (Bankr. N.D. Ill. 2013); *see also In*

*re Carr*, 468 B.R. 806, 808 (Bankr. E.D. Va. 2012) ("The rule requires notice of payment changes

and other charges and provides a procedure to draw a bright line at the conclusion of a case as to

any amounts that may remain due to a creditor relating to the cure payments or payments due on

a mortgage during the pendency of the chapter 13 case.").  Accurate representations are required

under Bankruptcy Rule 3002.1 to prevent the very problem that the Culbersons are facing.

Providing information to a debtor about the status of his or her mortgage loan is why the procedures

outlined in Bankruptcy Rule 3002.1 were enacted.  This Court considers the give and take between

the Trustee, creditor, and debtor outlined in Bankruptcy Rule 3002.1 to be a critical part of the administration of a Chapter 13 case.

Nevertheless, the Court feels constrained by how the Culbersons framed their claims.  *Cf. Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994) ("The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action.") (citations omitted).  The Culbersons did *not* plead that Mr. Cooper's Bankruptcy Rule 3002.1(g) Response was false.  Instead, the Culbersons chose to plead that Mr. Cooper intentionally or negligently "ignored the Chapter 13 Trustee's Notice of Final Cure." (Doc. No. 1 at 11, 12.)  That assertion implies that Mr. Cooper's Bankruptcy Rule 3002.1(g) Response was accurate in all respects, which creates a different scenario from the explicit violations of Bankruptcy Rule 3002.1 that the debtors pled in the *Bivens* case upon which the Culbersons rely.  *See also Trevino v. HSBC Mortg. Servs. Inc (In re Trevino)*, 535 B.R. 110, 131 (Bankr. S.D. Tex. 2015) ("Because Rule 3002.1(i) provides relief in situations involving a *lack* of notice, rather than incorrect notice, this claim must be dismissed.") (citation omitted).  The Culbersons' claims thus sound in state tort law and not under a bankruptcy rule or statute.

In reaching this conclusion, the Court is mindful of the risk that Mr. Cooper has discovered a loophole that can allow creditors to leave bankruptcy court jurisdiction but continue to make misrepresentations to debtors about amounts due.  The Court, however, cannot ignore that other cases addressing Bankruptcy Rule 3002.1 violations involved ongoing proceedings under that rule and explicit allegations that creditors did not fulfill their obligations under that rule.  *See In re Tollstrup*, No. 15-33924-DWH13, 2018 WL 1384378, at *3 (Bankr. D. Or. Mar. 16, 2018); *see*

22

*also In re Ferrell*, 580 B.R. 181, 185–86 (Bankr. D.S.C. 2017); *In re Howard*, 563 B.R. 308, 314

(Bankr. N.D. Cal. 2016).  The Culbersons chose a different strategy, perhaps because the Response

was accurate, leaving the Court to conclude that their second, third, and fourth claims do not arise

in or under Title 11.

 The only other basis for jurisdiction requires that the claims be "related to cases under title

11."  28 U.S.C. § 1334(b).  When the Court examines whether the tort claims could conceivably

have any effect on the estate being administered in bankruptcy, it must conclude that a recovery

would not have any effect on the estate.  The Culberson estate has been fully administered.

According to the confirmed plan, the property that the Culbersons owned at filing "remained

property of the estate until discharge, unless otherwise ordered by the Court."  (Main Case, Doc.

No. 19 at 3 ¶ 8.)  The confirmation order similarly provided that the property of the estate did not

vest in the Culbersons "until completion of the plan."  (*Id.* at 1.)  The Chapter 13 Trustee filed a

Certificate of Final Payment with the Court on May 18, 2020.  (Main Case, Doc. No. 36.)  Even

assuming that the Culbersons acquired additional property, including any causes of action, after

filing, and that property was included in the estate under Section 1306(a), that property also

revested in the Culbersons upon completion of the plan.  The confirmation order contained no

special provision related to vesting of property acquired after filing.  There is nothing remaining

in the estate to be administered.  Unlike the claims in the Court's previous decision in *Cawood*,

these causes of action were not property of the estate when the case was filed, and to the extent

that they might have existed prior to the final payment, they were revested in the debtor upon

completion of the plan.

23

The state tort claims seek damages for the benefit of the Culbersons.  They do not adjust the rights between the Culbersons and Mr. Cooper as debtor-creditor.  Winning or losing a tort claim will not change the Culbersons' post-confirmation options or their freedom to pursue the claims in another court.  Winning these claims would not require any change in the manner in which the case has already been administered.

Confirmation of a plan and subsequent closure of a case usually will deprive bankruptcy courts of jurisdiction over debtors' post-confirmation claims, where the plan addressed the claims, the estate's property has been distributed, and recovery on those claims "can literally can have no effect on the estate."  *Peabody Landscape Const. Inc. v. Schottenstein*, 371 B.R. 276, 280 (S.D. Ohio 2007) (citation omitted).  Here, if the Culbersons recover from Mr. Cooper, any recovery will not add property to the estate.  It will not affect the recovery to creditors.  This return of such actions to state courts is a part of the debtor's rehabilitation and ability to conduct his affairs without the supervision of the bankruptcy court.  The Court therefore will grant Mr. Cooper's motion to dismiss Counts Two, Three, and Four based on lack of subject-matter jurisdiction.

### D.  Fifth Claim: Breach of Contract

The fifth claim consists of a single sentence that refers to private documents: "Plaintiffs assert that Defendant breached the contract *created between the parties* by the loan documents, Deed of Trust, and subsequent assignments by sending improper and false mortgage statements and correspondence."  (Doc. No. 1 at 13 (emphasis added).)  The use of the term "parties" is ambiguous.  The Culbersons did not attach the documents referenced or identify what provisions in those documents were breached.  Assuming that Mr. Cooper was a party to the contract and not just to this proceeding, the Culbersons are asserting that Mr. Cooper's breaches occurred as far back as February 2020.  (*See* Doc. No. 1-3 at 1 (June 9, 2020 letter asserting that loan was past

24

due for the February 12, 2020 payment).)  Any claims resulting from Mr. Cooper's postpetition

breach would have belonged to the bankruptcy estate, possibly as after-acquired property.  *See* 11

U.S.C. § 1306(a).  However, the property revested in the Culbersons upon the completion of the

plan.  As with the tort actions, this action is not related to the bankruptcy case.  It can have no

effect on the fully administered estate or on the rights and liabilities of the Culbersons as modified

by the completed plan. *Cf. Eastland Partners Ltd. P'ship v. Brown (In re Eastland Partners Ltd.

P'ship)*, 199 B.R. 917, 920 (Bankr. E.D. Mich. 1996) ("Post-confirmation state law claims, such

as those brought by the plaintiffs here, are generally not within the bankruptcy court's jurisdiction,

even when, as here, the conduct giving rise to the state law claims or causes of action has interfered

or could potentially interfere with the [Chapter 11] reorganized debtor's ability to carry out its

obligations under the plan.") (collecting cases).  Consequently, the Culbersons will have to go to

state court to enforce their claims that a contract with Mr. Cooper was breached.  This Court

concludes that it lacks subject-matter jurisdiction over the fifth claim of the complaint and will

grant Mr. Cooper's motion as to that claim.

### E. Sixth Claim: Failure to Credit Payments

The Court turns now to the Culbersons' sixth claim, alleging violations of the Truth in

Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f.  TILA in itself is a general consumer-protection

statute and not a statute specific to bankruptcy.  Subject to the applicable limitations period, the

Culbersons could try to file an action in District Court to vindicate whatever violations of TILA

they believe have occurred.  The Culbersons argue that this Court can hear their sixth claim

because it heard a TILA claim in *Cawood v. Seterus, Inc. (In re Cawood)*, 577 B.R. 538 (Bankr.

E.D. Tenn. 2017).

This case differs from *Cawood*, though, as to whether the TILA violation was property of the estate. *Cawood* involved two Chapter 13 filings. The Court decided that it had jurisdiction over claims including a TILA claim because the second Chapter 13 case was ongoing. After the first Case was completed, the mortgage servicer allegedly violated TILA. When the second case was filed, the servicer filed a claim and objected to plan confirmation. The debtor challenged the claim as contradicting the notice of final cure payment in the prior case and the order deeming his mortgage current from his first bankruptcy case. The TILA claims arose prior to the second case and were property of the estate on the date of the second filing. Whether and how much the debtor owed the mortgage servicer directly affected the second bankruptcy estate and how the debtor would prepare a plan. *See id.* at 550 ("Even if Plaintiff is likely to be the primary beneficiary of any award, providing a 100% payment to the other creditor and a reduction in Plaintiff's mortgage debt can certainly qualify as having an effect on his bankruptcy estate."). The Court thus found that several of the debtor's allegations, including an allegation of a TILA violation, related to the bankruptcy case, creating subject-matter jurisdiction.

In contrast, the Culbersons filed the Main Case in 2015 and have not alleged any TILA violations that predate February 2020. Additionally, the Main Case concluded with a fully completed plan and a discharge. Even if TILA violations occurred during the case, creating causes of action, they revested in the Culbersons, leaving nothing in the estate. Consequently, no matter what the merits of the Culbersons' sixth claim might be, that claim cannot have any impact on a bankruptcy estate that is fully administered.

For the above reasons, the Court concludes that it lacks subject-matter jurisdiction over the Culbersons' sixth claim and will grant Mr. Cooper's motion with respect to that claim.

### F.  Seventh Claim: Fair Debt Collection

The Culbersons' reliance on *Cawood* also will be dispositive of their seventh claim for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p.  In their seventh claim, the Culbersons assert that Mr. Cooper's "failure to properly account for Plaintiffs' payments and failure to properly keep its records serve as violations of the FDCPA.  The violations stem from engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Defendant has also demanded an amount due from Plaintiffs which is inaccurate and inflated which violates and breaches the contract between the parties."  (Doc. No. 1 at 14.)  As the Court noted when addressing other claims above, the Culbersons filed the Main Case in 2015 and have not pled that the alleged conduct began before the filing of the petition.  Based on the exhibits that the Culbersons attached to their complaint, any violations of the FDCPA occurred no earlier than February 2020, the earliest date referenced in any of the statements or letters.  The seventh claim thus is a post-petition claim that has been revested in the Culbersons.  *Cf., e.g., Magee v. So. Fin. Sys. Inc. (In re Magee)*, No. 18-50587-KMS, 2019 WL 1503919, at *6 (Bankr. S.D. Miss. Apr. 4, 2019) (no jurisdiction over FDCPA claims that arose after the filing of the Chapter 7 petition) (citing *Marshall v. PNC Bank, N.A. (In re Marshall)*, 491 B.R. 217, 230 (Bankr. S.D. Ohio 2012)) (other citations omitted).  The post-petition status of the seventh claim and the completion of the Main Case distinguish the Culbersons' situation from the situation in *Cawood*, where the FDCPA claim arose before the filing of the second petition and where the second bankruptcy case was active and ongoing.  Here, the Culbersons' seventh claim will have no impact on any bankruptcy estate and will not affect any of their rights or liabilities under the Bankruptcy Code.  For these

reasons, the Court concludes that it lacks subject-matter jurisdiction over the seventh claim of the complaint and will grant Mr. Cooper's motion with respect to that claim.

### G. Eighth Claim: Violation of the Automatic Stay

The Court next will assess the Culbersons' eighth claim for a violation of the automatic stay. The Culbersons have pled two different willful violations of the automatic stay. First is Mr. Cooper's act of "identifying Plaintiffs' mortgage to be in default alongside their filing of the Response to the Trustee's Notice of Final Payments." (Doc. No. 1 at 15.) Second is Mr. Cooper's "failure to apply the Plaintiffs' payments timely." (*Id.*)

With respect to the first violation, the complaint identifies the initial mention by Mr. Cooper of a payments due to be on the Informational Statement dated April 21, 2020. Mr. Cooper reads the allegation in the complaint as referring only to those claims of default made in July that were "alongside the Response" which was filed in July, and argues that those claims of default could not have violated the stay because they were not made until after the stay had terminated. The Court does not read the allegation in the same way. The reference to "alongside the Response" can be read not as a temporal limitation but as a basis to support the Culbersons' contention that Mr. Cooper knew that its claims of default were wrong.

However, the Court agrees that the letters sent and the statements made after the stay terminated cannot be the bases for violations. In general, the automatic stay that applied upon the commencement of the Main Case would have ended at either the closing of the case or the granting of a discharge, whichever came earlier. 11 U.S.C. § 362(c)(2). The Culbersons received their discharge on May 20, 2020, while the Main Case did not close until August 11, 2020. The automatic stay of actions against the Culbersons thus ended on May 20, 2020, replaced by the permanent discharge injunction of 11 U.S.C. § 524(a). *See Pertuso v. Ford Motor Credit Co.*, 233

F.3d 417, 425 (6th Cir. 2000) ("Sections 524 and 362 apply to different time periods, of course. Section 362 applies during the automatic stay, whereas § 524(a)(2) applies post-discharge.") (citation omitted); *Stevens v. Citizens Tri-County Bank (In re Stevens)*, No. 05-16282, 2011 WL 6812807, at *6 (Bankr. E.D. Tenn. Dec. 28, 2011) ("Since the Plaintiff had received a discharge from this court and his bankruptcy case had been closed before the Bank's foreclosure action, his claim for violation of the automatic stay must be DISMISSED."). The expiration of the automatic stay had two consequences. First, violating the automatic stay after May 20, 2020 would have become legally impossible. *Cf. In re Michalski*, 452 F. App'x 656, 658 (6th Cir. 2011) (unpublished opinion) (finding that a prosecutor's office "could not have violated the automatic stay when it initiated criminal proceedings against [the debtor] over one year later" after a discharge); *In re Carpenter*, No. 08-00400, 2008 WL 5132957, at *1 (Bankr. D.D.C. Dec. 3, 2008) (foreclosure sale of real property occurring after a Chapter 13 case was dismissed and before the dismissal order was vacated did not violate the automatic stay because "[w]hen the foreclosure sale was held, there was no automatic stay in place, and the sale cannot now become a sale that was barred by what was then a non-existent automatic stay") (citation omitted). The stay against property of the estate ended when the property revested in the Culbersons at the latest on May 20, 2020, when they received their discharge.

Nonetheless, the Culbersons have pled at least one communication—the Informational Statement of April 21, 2020—that, for Civil Rule 12 purposes, can be construed as an attempt to collect prior to the entry of discharge.[3] With at least one attempt to collect asserted, the Culbersons

---

[3] In the example of the April 21, 2020 Informational Statement, Mr. Cooper did include, in the smallest-sized text on the page, a disclaimer acknowledging that the Culbersons were in bankruptcy and that the statement was sent "for informational and compliance purposes only." (Doc. No. 1-2 at 1.) Nothing in the regulations governing periodic statements, however, requires lenders or servicers either to send debtors in

can avoid divisions between bankruptcy courts over the kind of pre-discharge act that would have

to be pled to sustain an action under Section 362(k).  *Compare Swink v. Fed. Nat'l Mortg. Ass'n*

*(In re Swink)*, No. 19-51012, 2021 WL 4768091, at *8 (Bankr. M.D.N.C. Oct. 12, 2021) (Section

362(k) claim dismissed for failure to assert a pre-discharge act; "[t]o sustain an action under

§ 362(k), the Plaintiff must demonstrate an act to collect occurred while the automatic stay was in

effect") (citing *Carnegie v. Nationstar Mortg., LLC (In re Carnegie)*, 621 B.R. 392, 413 (Bankr.

M.D.N.C. 2020) ("Here, the Plaintiff has not plausibly pleaded the Defendant undertook any act

to collect prior to the entry of discharge.")) *with Bivens v. NewRez LLC (In re Bivens)*, 625 B.R.

843, 849 (Bankr. M.D.N.C. 2021) ("Plaintiff alleged that Defendant was aware of both the

automatic stay and the confirmed plan and despite this knowledge misapplied the payments

received under the confirmed plan.  Thus, Plaintiff has plausibly pled a willful violation of the

automatic stay.") *and Williams v. CitiFinancial Servicing LLC (In re Williams)*, 612 B.R. 682, 694

(Bankr. M.D.N.C. 2020) ("While there is a split of authority on the issue, the majority of courts to

consider the issue have concluded that misapplication of chapter 13 plan payments is a cause of

action for violation of the automatic stay.") (collecting cases) *and Pyott v. Fairbanks Capitol Corp.*

*(In re Pyott)*, 351 B.R. 899, 905 (Bankr. E.D. Tenn. 2006) (Stinnett, *J.*) ("If the debtors owed

nothing, could the letter [from the creditor showing a principal balance due after final plan

payment] have violated the automatic stay?  Yes.  The letter would have hindered the debtors'

ability to deal with the property before they completed the plan and obtained a release of the second

mortgage without a good legal reason for doing so.  The letter might be treated as a violation of

---

bankruptcy a "voluntary payment coupon" with a dotted line and an instruction to "detach here and return
with your payment" (*id.*); or to send debtors in bankruptcy statements containing inaccurate information.
*See generally* 12 C.F.R. § 1026.41 ("Regulation Z").

the automatic stay because it was an unlawful method of controlling property of the bankruptcy estate.") (citing Section 362(a)(3)). Discovery and further proceedings can clarify whether the Informational Statement here, with both its disclaimers and its voluntary payment coupon, should be considered coercive. *Cf. Polonowski v. PNC Bank, N.A.*, No. 1:20-CV-151, 2021 WL 4476996, at *2 (W.D. Mich. Sept. 30, 2021) (informational statements required under TILA do not violate the automatic stay if not coercive or an attempt to obtain property of the estate). For now, the Culbersons plausibly have pled a violation.

With respect to the second violation, Mr. Cooper contends that there are no facts alleged about a failure to apply the payments timely prior to May 20, 2020. The Court disagrees. The April 21, 2020 Informational Statement attached to the complaint reflects a balance of $5,651.40. The monthly payment according to that same statement was only $941.90. The Culbersons paid the April and May payments of $941.90 timely, according to Exhibit 2 attached to the complaint. (Doc. No. 1-2 at 1.) In July 2020, Mr. Cooper filed a Bankruptcy Rule 3002.1(g) Response that agreed that there were no pre-petition defaults remaining and agreed that all post-petition payments due through June 2020 were paid. No one disputes that the Response was accurate. A plausible inference to be drawn from the "payment due" numbers on the April 21, 2020 Informational Statement is that some of those payments that Mr. Cooper received were not timely applied, thereby leaving an amount due. The statement expressly shows that nothing was applied to the "arrears" from the prior month and that two payments were adjusted from "miscellaneous suspense." (Doc. No. 1-2.) The Court finds that a plausible claim has been pled that the payments were not applied in a manner to show the loan as current.

31

Mr. Cooper next argues that misapplication of payments is not a violation of the stay and that the claim should be dismissed as a matter of law. The Bankruptcy Court for the Southern District of Texas in *Rodriguez v. Countywide Home Loans, Inc. (In re Rodriguez)*, 421 B.R. 356 (Bankr. S.D. Tex. 2009), held that the misapplication of payments did not fall under specific provision of 11 U.S.C. § 362(a). The *Rodriguez* court noted that the payment was voluntary; and that once received, the payment became the creditor's property. When the property was no longer the debtor's property, no action taken with respect to those funds could be an "improper exercise over estate property." *Id*. at 367. The Culbersons note that even the court in *Rodriguez* noted that there were other courts that found that misapplication of payments was a violation of the stay.

The issue is whether such conduct—if ultimately proven—violates the automatic stay. The Culbersons correctly cite several opinions holding that such misapplications of plan payments violate the stay. *Payne v. Mortg. Elec. Registration Sys., Inc. (In re Payne),* 387 B.R. 614, 638–39 (Bankr. D. Kan. 2008); *Jones v. Wells Fargo Home Mortg. (In re Jones),* 366 B.R. 584, 599 (Bankr. E.D. La. 2007), *reversed in part and remanded on other grounds by Wells Fargo Bank, N.A. v. Jones,* 391 B.R. 577, 609 (E.D. La. 2008); *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez),* 372 B.R. 289, 313 (Bankr. S.D. Tex. 2007); *McCormack v. Federal Home Loan Mortg. Corp. (In re McCormack),* 203 B.R. 521, 525–26 (Bankr. D.N.H. 1996). In *In re Jones*, the misapplication involved the mortgage lender applying payments to its undisclosed postpetition charges that the court determined was a taking of property of the estate. 366 B.R. at 599. *In re Sanchez* also involved application of payments to postpetition charges. 372 B.R. at 313. *In re McCormick* involved a mortgage holder that refused to alter its accounting to reflect the confirmation of the plan and the cure of the escrow amounts. The court specifically rejected the

32

lender's argument that its continued showing of cured items as live items rather than honoring and

recognizing the effect of a Chapter 13 and the cure of those items was just the result of a computer

software deficiency. 203 B.R. at 524. Finally, *In re Payne* involved a Chapter 13 debtor and a

mortgage lender who entered into an agreed order regarding the payment of the defaults through

the plan. The lender failed to account for the payments that it received from the Chapter 13 trustee

as prescribed in the agreed order. Specifically, the lender applied payments to late charges that

had been disallowed and held some funds in a suspense account. The court found that an effort to

recover a disallowed fee violated the stay. 387 B.R. at 638. Together, these cases hold that even

after the payment is sent to the creditor, a failure to apply those fees in the ways authorized under

the plan is a violation of the stay, where the accounting frustrates debtors' efforts to cure defaults

and to obtain a fresh start.

The Court notes that the Culbersons' case involves more than just internal accounting

entries. The outstanding balance was communicated to the Culbersons. *Cf. Kerney v. Capital One

Fin. Corp. (In re Sims)*, 278 B.R. 457, 471 (Bankr. E.D. Tenn. 2002) (Parsons, *J.*) (explaining that

a creditor "could produce all kinds of paperwork which if communicated to the debtor or a third

party would violate the stay, but absent that communication, some overt act, or resulting effect on

the debtor, no violation has occurred"); *accord Jacks v. Wells Fargo Bank, N.A. (In re Jacks)*, 642

F.3d 1323, 1329 (11th Cir. 2011).

More recently two courts in North Carolina have concluded that a misapplication of

payments is a violation of the stay. *See Bivens v. NewRez LLC (In re Bivens)*, 625 B.R. 843, 849

(Bankr. M.D.N.C. 2021) ("Plaintiff alleged that Defendant was aware of both the automatic stay

and the confirmed plan and despite this knowledge misapplied the payments received under the

33

confirmed plan. Thus, Plaintiff has plausibly pled a willful violation of the automatic stay.");

*Williams v. CitiFinancial Servicing LLC (In re Williams)*, 612 B.R. 682, 694 (Bankr. M.D.N.C.

2020) ("While there is a split of authority on the issue, the majority of courts to consider the issue

have concluded that misapplication of chapter 13 plan payments is a cause of action for violation

of the automatic stay.") (collecting cases). This Court finds that the misapplication of payments

can be a violation of the automatic stay and rejects the holding of *Rodriguez* that the lender's

possession of the funds negates an improper exercise over property of the estate..

The Court thus will deny Mr. Cooper's motion with respect to the eighth claim.

### H. Motion for Leave to Amend

Finally, the Court will review the Culbersons' motion for leave to amend their complaint.

As the Court noted above, the Culbersons propose to amend their complaint by adding details to

their eighth claim for a violation of the automatic stay; and by adding a new ninth claim for a

violation of the discharge injunction. When reviewing proposed amendments to pleadings, "[t]he

court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also* Fed. R.

Bankr. P. 7015. Nonetheless, "[a] motion to amend a complaint should be denied if the amendment

is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing

party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citations omitted).

Among other factors to consider, first requests for amendments, and early requests filed before the

start of discovery, are unlikely to show bad faith, delay, or prejudice. *See, e.g., Evans v. City of

Ann Arbor*, No. 21-10575, 2021 WL 2949502, at *4 (E.D. Mich. July 14, 2021) (citations omitted);

*Shilander v. Cleveland Mun. Sch. Dist.*, No. 1:04 CV 2031, 2005 WL 8167106, at *2 (N.D. Ohio

July 25, 2005). As for futility, the Court may deny the Culbersons' motion if it "concludes that

34

the pleading as amended could not withstand a motion to dismiss." *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986) (citation omitted).

The Culbersons' proposed amended eighth claim raises no concerns that would require denial of leave to amend. The proposed amendments add details to the theory of liability in the eighth claim but do not change the theory itself. The Culbersons still would be alleging that a pre-discharge misapplication of payments led to at least one pre-discharge communication that constituted a violation of the stay. The Court concluded above that the Culbersons' theory plausibly states a legally cognizable claim for a violation of the automatic stay. The proposed amendments, therefore, would not be futile. Additionally, the Culbersons have not asked for any prior amendments, and this adversary proceeding is in its earliest stages. Granting leave to amend thus would not delay the adversary proceeding or cause prejudice to Mr. Cooper.

The Culbersons' proposed new ninth claim raises no procedural concerns about futility. In the ninth claim, the Culbersons would accuse Mr. Cooper of failing to credit plan payments in a way that violated the discharge injunction. With exceptions not applicable here, "[t]he willful failure of a creditor to credit payments received under a plan confirmed under this title . . . shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor." 11 U.S.C. § 524(i). Proceedings to enforce Section 524(i) are brought post-discharge and "can relate to a creditor's *acts* of willful failure to credit payments in accordance with the plan *that occurred prior to discharge*." *Santander Consumer, USA v. Houlik (In re Houlik)*, 481 B.R. 661, 671 (B.A.P. 10th Cir. 2012).

35

The problem with amending the complaint to add the ninth claim is that there is no private right of action to address a violation of any of the provisions of Section 524, including Section 524(i).  *See, e.g., Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000).  Courts instead address violations of Section 524 through contempt proceedings under their inherent authority and under 11 U.S.C. § 105(a).  *See, e.g., In re Moore*, 521 B.R. 280, 290 (Bankr. E.D. Tenn. 2014); *Pompa v. Wells Fargo Home Mortg., Inc. (In re Pompa)*, No. 06-31759, 2012 WL 2571156, at *6 (Bankr. S.D. Tex. June 29, 2012).[4]  Procedurally, allegations of a violation of the discharge injunction do not require an adversary proceeding when brought alone, and some courts, including this one, have dismissed those allegations when included in an adversary complaint.  *See Barrientos*, 633 F.3d at 1191 (adversary complaint with sole cause of action for contempt of Section 524 had to be brought instead as a motion under Bankruptcy Rules 9020 and 9014); *Moore*, 521 B.R. at 290 (same); *Laudani v. Wells Fargo N.A. (In re Laudani)*, 506 B.R. 19, 28 (Bankr. D. Mass. 2014) (dismissal of a count in an adversary complaint for a violation of a discharge injunction because the debtor's

---

[4] Case law is ambiguous about whether a Bankruptcy Court may invoke 11 U.S.C. § 105(a) as a statutory authority for a contempt proceeding under Section 524, independent of that court's inherent authority.  The Sixth Circuit in *Pertuso* said no but did so in the context of rejecting a private right of action or other broad remedial relief to address violations of Section 524.  *See Pertuso*, 233 F.3d at 426 n.1; *accord Forson v. Nationstar Mortg., LLC (In re Forson)*, 549 B.R. 866, 870 (Bankr. S.D. Ohio 2016) ("Thus, at least with respect to courts in the Sixth Circuit, 11 U.S.C. § 105(a) cannot bestow on a court the statutory power or jurisdiction over nationwide class actions to remedy violations of the discharge injunction.").  Orders under Section 105(a), however, likely can address violations of Section 524 if limited to the ordinary contempt relief of compensatory damages, costs, and fees.  *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) (interpreting *Pertuso* and citing *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 917 (7th Cir. 2001)).  The Culbersons explicitly invoked Section 105 in their proposed ninth claim when demanding "all actual, statutory, and punitive damages, including costs and attorney fees."  (Doc. No. 20-2 at 16.)  This Court concludes that Section 105(a) would be available to bolster its inherent authority to enforce the discharge injunction here, but that, consistent with *Pertuso*, no relief under that section would be available beyond compensatory damages, costs, and fees.

"remedy is a motion for contempt filed in the main case"); *Whitaker v. Bank of Am. (In re Whitaker)*, No. 09-50301, 2013 WL 2467932, at *6 (Bankr. E.D. Tenn. June 7, 2013) (Parsons, *C.J.*) (dismissal of adversary complaint containing a sole cause of action for violation of a discharge injunction); *see also Frambes v. Nuvell Nat'l Auto Fin., LLC (In re Frambes)*, 454 B.R. 437 (Bankr. E.D. Ky. 2011) (dismissal of adversary complaint, where cause of action for violation of discharge injunction was limited to contempt motion and where court lacked jurisdiction over post-discharge claims under FDCPA and state consumer protection law).[5]

Based on the Court's prior ruling in *Moore*, the Court will deny the Culbersons' motion to add the claim for violation of the discharge injunction. The denial is without prejudice to the Culbersons bringing a motion for contempt. The Court, as it did in *Moore*, will reserve its right to consolidate the adversary proceeding and the motion, if filed, for trial.

---

[5] The Court recognizes that other courts have avoided duplicate proceedings by allowing Section 524 violations to be included in adversary proceedings that contain other causes of action. *See, e.g., Swink*, 2021 WL 4768091, at *7 (adversary proceeding included cause of action for violation of discharge injunction among several others); *Blanco v. Bayview Loan Servicing, LLC (In re Blanco)*, No. 20-10078, 2021 WL 4190170, at *31 (Bankr. S.D. Tex. Sept. 14, 2021) (same); *Bivens*, 625 B.R. at 849 (adversary proceeding containing causes of action for violations of discharge injunction, automatic stay, and Bankruptcy Rule 3002.1); *Bilfield v. Ohio Commerce Bank (In re Bilfield)*, No. 11-18474, 2014 WL 1323185, at *2 (Bankr. N.D. Ohio Mar. 31, 2014) (alleged Section 524 violation adjudicated as part of an adversary proceeding). In contrast, though, this adversary proceeding will contain only one claim going forward. Requiring a motion for contempt under Section 524(i) will avoid a scenario in which any contempt proceedings overshadow the sole claim properly brought by adversary complaint.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court will grant Mr. Cooper's motion to dismiss (Doc. No. 8) in part with respect to the first through seventh claims of the complaint but will deny it with respect to the violation of the automatic stay.  The Court will grant the Culbersons' motion for leave to amend (Doc. No. 20) only with respect to the willful violation of the stay under 11 U.S.C. § 362(k).  The Court will deny the motion for leave to amend to include a contempt claim under 11 U.S.C. § 524(i) in the adversary proceeding, but such denial is without prejudice to the Culbersons bringing a motion for contempt.

A separate order will follow.

# # #